UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DIAMOND STAFFING SOLUTIONS, INC.,

Plaintiff,

v.

DIAMOND STAFFING, INC.,

Defendant.

Civil Action No. 05-40046-FDS

**PLAINTIFF DIAMOND STAFFING SOLUTIONS, INC.'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT**

Plaintiff Diamond Staffing Solutions, Inc. ("Diamond Staffing Solutions$^{SM}$") respectfully submits this opposition to Defendant Diamond Staffing, Inc.'s ("DSI") Motion to Dismiss the Complaint or, alternatively, for entry of Summary Judgment ("DSI's Motion").

DSI's entire motion focuses solely on the *merits* of Count I of the Verified Complaint, trademark infringement pursuant to 15 U.S.C. § 1125(a). Properly characterized then, DSI's Motion is for Partial Summary Judgment. It is wholly premature for summary judgment to enter at this juncture, however, particularly considering that *no* discovery has been completed and considering this Court's statement that "good cause" exists for the parties to conduct discovery on an expedited basis.[1] Moreover, there are, at a minimum, numerous disputed issues of material fact on the current record regarding (1) plaintiff's ownership of the "Diamond Staffing Solutions$^{SM}$" and "Diamond Staffing$^{SM}$" service marks (collectively, the "Marks"); (2) priority of use over the Marks in the Commonwealth of Massachusetts (the only jurisdiction in which DSI contests

---

[1] To this end, Diamond Staffing Solutions$^{SM}$ submits the Affidavit of Nicholas G. Papastavros, submitted pursuant to Fed. R. Civ. P. 56(f).

priority); and (3) a likelihood of confusion as to the origin or sponsorship of the staffing services offered by plaintiff and defendant. Indeed, on the current record it would be more appropriate for summary judgment to enter in *Diamond Staffing Solutions'*[SM] favor on the trademark infringement claim – not DSI.[2]

## FACTUAL BACKGROUND[3]

1. Suzanne DeVries is the founder and President of Diamond Staffing Solutions[SM], a company incorporated in the State of Delaware with a principal place of business at 5 Remington Court, Derry, New Hampshire. Affidavit of Suzanne DeVries, dated May 9, 2005, ¶ 1, at 1. ("DeVries Aff.") (attached hereto as Exhibit 1).

2. Ms. DeVries founded Diamond Staffing Solutions[SM] in May 2002. Since the time of its founding, Diamond Staffing Solutions[SM] has focused on placing candidates in employment opportunities with Diamond Staffing Solutions'[SM] clients, principally in the jewelry and luxury businesses. Diamond Staffing Solutions[SM] has used the "Diamond Staffing Solutions[SM]" and "Diamond Staffing[SM]" service marks (collectively, the "Marks") in commerce since May 2002. DeVries Aff., ¶ 2, at 1.

3. Diamond Staffing Solutions'[SM] client base includes a number of regional and national fine jewelry retailers and wholesalers. From its beginnings in 2002, when its first two clients were Helzberg Diamonds (a jewelry retailer with approximately 260 stores throughout the United States) and Whitehall Jewelers (a jewelry retailer with approximately 386 stores in 38 states across the United States), Diamond Staffing Solutions[SM] quickly developed a national

---

[2] Defendant's request for the Court to compel posting of a bond was denied at the May 9, 2005 hearing. As contemplated by the Court at this hearing, plaintiff expressly reserves the right to move for summary judgment on one or more of its claims following additional development of the factual record.

[3] Plaintiff also relies upon and incorporates herein its Statement of Disputed Material facts, submitted pursuant to L.R. 56.1.

reputation for providing high quality staffing services. By the time DSI commenced doing business under that name in the fall of 2003, Diamond Staffing Solutions[SM] had already placed a number of candidates with Whitehall, Helzberg and other regional and national jewelry retailers. DeVries Aff., ¶ 3, at 1-2.

4. Between May 2002 and the time when DSI commenced doing business under that name in the fall of 2003, Diamond Staffing Solutions[SM] conducted significant business involving the Commonwealth of Massachusetts. Among other things, Diamond Staffing Solutions[SM] searched for and placed a candidate at Whitehall Jewelers' Braintree, MA store; conducted a significant state-wide search for a candidate for its Attleboro, MA store; placed a candidate at Joel McFadden Designs in Greenfield, MA; and placed numerous listings seeking candidates for its clients' Massachusetts-based operations on www.monster.com. DeVries Aff., ¶ 4, at 2; accord Second Affidavit of Suzanne DeVries, dated May 20, 2005, ¶ 1, Ex. 1 ("DeVries Aff. -2")

5. Between May 2002 and the time when DSI commenced doing business under that name in the fall of 2003, Diamond Staffing Solutions[SM] advertised in a number of industry trade publications disseminated in Massachusetts and around the country, including *Jewelers Circular Keystone* ("JCK"), *Modern Jeweler*, *National Jewelers*, and *Professional Jewelers*. Diamond Staffing Solutions[SM] has also advertised in a regionally distributed newspaper seeking candidates for a client, and has advertised in trade publications *InStore Magazine* and *Couture*. DeVries Aff., ¶ 5, at 2.

6. In May of 2003, Ms. DeVries attended the most prominent jewelry trade show in the nation, the JCK Las Vegas trade show, on behalf of Diamond Staffing Solutions[SM]. At that show, Diamond Staffing Solutions[SM] disseminated a number of business cards and brochures, and had meetings with a number of retail and wholesale jewelry executives, in an attempt to further

enhance the reputation of the company. Diamond Staffing Solutions[SM] experienced considerable growth in its business and reputation in the months following this trade show. Ms. DeVries, on behalf of Diamond Staffing Solutions[SM], also attended the JCK Las Vegas trade show in May, 2004 and anticipates attending in 2005 as well. DeVries Aff., ¶ 7, at 3 and n.1.

8. In 2004, Diamond Staffing Solutions[SM] incurred approximately $ 75,000 in nationwide advertising and promotional expenditures to build its name and reputation, following on the heels of significant expenditures in 2002 and 2003. In 2005, Diamond Staffing Solutions[SM] anticipates spending approximately $100,000 in advertising and promotional expenditures. DeVries Aff., ¶ 8, at 3.

9. Diamond Staffing Solutions'[SM] advertising, promotion and delivery of quality services to its clients has resulted in its considerable growth as a company over the past several years, and the development of a national reputation and significant goodwill. Today, Diamond Staffing Solutions[SM] has approximately sixty clients, with which it anticipates placing upwards of 75 to 100 candidates this year. In addition to Helzberg, Diamond Staffing Solutions[SM] provides jewelry and luxury staffing services to J.C. Penney, Sterling Jewelers (with over 1,000 stores coast-to-coast, including the Kay Jewelers chain), Borsheim's Jewelers and Swarovski AG. Diamond Staffing Solutions[SM] has also contracted with Tiffany's. DeVries Aff., ¶ 9, at 3.

10. Diamond Staffing Solutions'[SM] reputation has begun to transcend the jewelry industry. The staffing services Diamond Staffing Solutions[SM] recently started providing to Swarovski AG include searches for personnel in the area of giftware, for example. DeVries Aff., ¶ 10, at 3.

11. Since the fall of 2003, Diamond Staffing Solutions'[SM] employees have received numerous e-mails from candidates which were intended for DSI but were instead misdirected to

Diamond Staffing Solutions[SM]' attention. Moreover, Ms. DeVries is aware of at least four instances in which clients or candidates looking for Diamond Staffing Solutions[SM] were confused by the services offered by DSI; Kirschner Corporation of Minneapolis, Minnesota (see Verified Complaint, Exhibit E); John Joseph Jewelers of Iowa; a woman in New Jersey who visited a DSI office looking for Diamond Staffing Solutions[SM]; and the August/September 2004 purported incident involving an inquiry from a Chicago company referenced in paragraph 3 of the Affidavit of Annie Moore. DeVries Aff., ¶ 12, at 4; DeVries Aff.-2, ¶¶ 2-3 at 2-3.

12. Diamond Staffing Solutions[SM] has also received misdirected communications from DSI internal employees, and misdirected communications involving DSI accounting records. DeVries Aff., ¶ 14, at 4.

13. Diamond Staffing Solutions[SM] and DSI both seek to obtain candidates for their clients by advertising and obtaining resumes through online sites such as www.monster.com. DeVries Aff., ¶ 15, at 4.

## DISCUSSION

I. **Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6) Must Fail Because Defendant Does Not Allege That Plaintiff Failed to State a Claim Upon Which Relief Can Be Granted.**

Rule 12(b)(6) allows dismissal of a complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Lalonde v. Textron, Inc., 369 F.3d 1, 6 (1st Cir. 2004) (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002)). Indeed, "[w]hen a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Swierkiewicz, 534 U.S. at 514 (citations omitted).

In its Motion, DSI does not state or even intimate that Diamond Staffing Solutions[SM] *failed to state* an essential element for any of the claims in its Complaint. Nor does DSI claim that Diamond Staffing Solutions[SM] is not entitled to offer evidence to support a claim. Instead, DSI claims that based on the evidence and affidavits presented, there is no genuine issue of material fact that Diamond Staffing Solutions[SM] cannot prevail on its trademark infringement claim. As DSI acknowledges, this converts DSI's Motion into a Motion for Summary Judgment. See DSI's Motion at 4, quoting Fleet National Bank v. H & D Entertainment, Inc., 96 F.3d 532, 537 (1st Cir. 1996) ("[i]f on a motion asserting the defense numbered (6) for failure to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56."); accord Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 12 (1st Cir. 2004).

DSI did not challenge the adequacy of Diamond Staffing Solutions'[SM] pleading because it would have been futile to do so. To make out a claim under § 1125 of the Lanham Act, the plaintiff must prove: (1) the ownership of a distinctive mark entitled to trademark protection; (2) the use of that mark in interstate commerce; and (3) its use by another in a manner likely to cause confusion as to the affiliation of the parties or origin or sponsorship of the goods or services. Boustany v. Boston Dental Group, Inc., 42 F. Supp. 2d 100, 104-05 (D. Mass. 1999). Diamond Staffing Solutions[SM] has sufficiently pled each of these requisite elements. See, e.g. Verified Complaint, Introduction ("Diamond Staffing Solutions[SM] places temporary and permanent personnel with wholesale and retail establishments in the jewelry industry nationwide"); ¶ 11, at 3 ("[p]laintiff's use of Diamond Staffing[SM] more than 18 months prior to the first use of the mark by the Defendant gives Plaintiff common law rights to the exclusive use of the mark"); ¶ 22, at 6 ("[p]laintiff has used the Diamond Staffing[SM] mark in commerce; the mark, by itself, is not functional in any way;

and the mark is distinctive because, at a minimum, it merely suggests the type of services Plaintiff provides"); and ¶ 25, at 6 ("[d]efendant's provision of services utilizing the name "Diamond Staffing" has caused and is likely to cause confusion, cause mistake, or deceive customers concerning, among other things, the origin, sponsorship or approval of the personnel services being provided"). Accordingly, DSI's Rule 12(b)(6) Motion should be denied.

II. **Defendant's Motion for Summary Judgment Pursuant to Rule 56 Must Fail, As There Are (At Minimum) Numerous Disputed Issues of Material Fact On This Record**

Summary judgment is proper "only when the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law.'" De Jesus-Rentas v. Baxter Pharm. Servs. Corp., 400 F.3d 72, 74 (1st Cir. 2005); see Fed. R. Civ. P. 56(c). This Court should "construe the evidence in the light most favorable to the non-moving party," Santoni v. Potter, 369 F.3d 594, 598 (1st Cir. 2004), and all reasonable inferences must be drawn in favor of Diamond Staffing Solutions$^{SM}$. Beacon Mutual Insurance Company v. OneBeacon Insurance Group, 376 F.3d 8, 17 (1st Cir. 2004). Thus, to prevail on its motion for summary judgment, DSI "must show that there is an absence of evidence to support [Diamond Staffing Solutions$^{SM}$'] position." Rogers v. Fair, 902 F.2d 140, 143 (1st Cir. 1990).

As the record (at minimum) is replete with disputed facts, this Court should deny DSI's motion for summary judgment.

A. Summary Judgment Is Premature.

At the May 9, 2005 hearing before the Court on Diamond Staffing Solutions'$^{SM}$ Motion for Expedited Discovery, the Court stated that:

> But my expectation here, I guess, is that unless the case is dismissed under Rule 12(b)(6), we'll have a preliminary injunction hearing. I will either grant or deny the preliminary injunction, but either way we'll have a case that will go forward with additional discovery and summary judgment briefings.

Transcript of May 9, 2005 hearing at 45 (attached to the Affidavit of Nicholas G. Papastavros as Ex. 1 ("Papastavros Aff.")).

The parties have already exchanged written discovery requests, and will be engaging in deposition discovery in anticipation of preliminary injunction briefing prior to the Court-ordered deadline of June 10, 2005. Indeed, *no* discovery has taken place thusfar, and it is accordingly premature for summary judgment as evidenced by the Rule 56(f) Affidavit of Nicholas G. Papastavros submitted herewith.

Nevertheless, as set forth below defendant cannot be entitled to summary judgment even on the current factual record.

B.    Plaintiff Is Likely To Prevail On Its Claim For Trademark Infringement.[4]

Section 43(a) of the Lanham Act creates a federal cause of action for any person who believes that he or she is or is likely to be damaged by commercial use of any word, term, name, symbol, or device, in connection with any goods or services, which is likely to cause confusion, or to cause mistake, or to deceive. 15 U.S.C. § 1125(a). Under the three part Boustany test set forth above, the key inquiry "is whether the defendant's use of the plaintiff's trademark creates confusion" in the minds of third parties coming into contact with the parties. Flynn v. AK Peters, Ltd., 377 F.3d 13, 19 (1st Cir. 2004); 3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 23:1, at 23-8 (4th ed. 2005). To determine whether there is a likelihood of confusion between Diamond Staffing Solutions[SM]' rights in the Marks and DSI's use of "Diamond Staffing", this Court should consider the following eight factors:

(1)    the similarity of the marks;

---

[4] Diamond Staffing Solutions[SM] explicitly reserves the right to present additional information evidencing its "likelihood of success on the merits" in conjunction with briefing in support of its preliminary injunction.

(2)   the similarity of the goods;

(3)   the relationship between the parties' channels of trade;

(4)   the relationship between the parties' advertising;

(5)   the classes of prospective purchasers;

(6)   evidence of actual confusion;

(7)   the defendants' intent in adopting its mark; and

(8)   the strength of the plaintiff's mark.

Pignons S.A. de Mecanique de Precision v. Polaroid Corp., 657 F.2d 482, 487 (1st Cir. 1981).

1. Plaintiff Is The Owner Of A Distinctive Mark.

DSI's argument that it has superior rights to the "Diamond Staffing" mark based on (i) its Massachusetts state registration, (ii) its earlier filing date for federal registration, and (iii) plaintiff's purported lack of prior use in Massachusetts, is legally and factually flawed and should be rejected. Moreover, contrary to DSI's suggestion there is no other company registered to do business in Massachusetts with superior rights to the Marks than Diamond Staffing Solutions[SM].

As a preliminary matter, it is black-letter law that ownership of a service mark is established through actual use, not registration. As McCarthy states unambiguously, "it is *not registration*, but only *actual use* of a designation of a mark, that creates rights and priority over others…the rule in the United States is that ownership of a mark goes to the first to use, not first to file." 3 McCarthy, McCarthy on Trademarks and Unfair Competition § 16:18, at 16-36. Simply stated, "trademark ownership is *not* acquired by federal or state registration." Id.; accord Volkswagenwerk Aktiengesellschaft v. Wheeler, 814 F.2d 812, 815-16 (1st Cir. 1987) ("[r]egistration does not create the underlying right in a trademark. That right which accrues from

the use of a particular name or symbol, is essentially a common law property right") (citations omitted).

Diamond Staffing Solutions[SM] commenced use of the Marks in interstate commerce in connection with staffing services in May 2002. Verified Complaint, ¶ 7-8, at p. 3; Affidavit of Suzanne DeVries, dated May 9, 2005, ¶ 2, at 1 ("DeVries Aff."). In contrast, by its own admission DSI did not commence using the term "Diamond Staffing" until at least November 8, 2003 – *eighteen months* thereafter. Verified Complaint, ¶ 9, at p. 3; Affidavit of Mary Casey, dated May 5, 2005, ¶ 5, at 2 ("Casey Aff."); Affidavit of Francis Vaccaro, dated May 6. 2005, ¶ 4, at 1 ("Vaccaro Aff."). The eighteen months of prior use of the Marks between May, 2002 and November 8, 2003 included use of the marks nationwide, including significant use of the marks in Massachusetts. DeVries Aff., ¶ 3. at 1-2, DeVries Aff. -2, ¶ 1, at 1. Among other things, during this eighteen month period Diamond Staffing Solutions[SM] searched for and placed a candidate at Whitehall Jewelers' Braintree, MA store; conducted a significant state-wide search for a candidate for Whitehall's Attleboro, MA store; placed a candidate at Joel McFadden's Designs in Greenfield, MA; placed listings seeking candidates for its clients' Massachusetts-based operations on www.monster.com, which Massachusetts individuals and entities accessed; and advertised in a number of national jewelry publications that are distributed within Massachusetts. DeVries Aff., ¶¶ 4-5, at 2. This establishes Diamond Staffing Solutions'[SM] priority of use over the Marks in Massachusetts and elsewhere, rendering DSI's December 2003 registration of the "Diamond Staffing" mark in the Commonwealth of Massachusetts *wholly irrelevant*. See 3 McCarthy, Trademarks and Unfair Competition § 22:1, at 22-3 ("[s]tate registration of a service mark does not create rights which would not otherwise exist; no substantive rights are established by registration. Thus, the senior user is the owner, even though the junior user was first to register").

DSI also attempts to challenge Diamond Staffing Solutions'$^{SM}$ ownership rights in the Marks by identifying the asbestos-removal company previously known as Diamond Staffing Services, Inc. ("DSSI") in Massachusetts, as well as "312 businesses in Massachusetts" and "10,000 companies nationwide" which use some derivation of the name "Diamond." See Motion at 8 n.3. Both arguments miss the mark.

With respect to the first, the Casey Affidavit tendered by DSI concedes that DSSI was dissolved on March 25, 2002. See Casey Aff., ¶ 4, at 1. Notably, this dissolution occurred *before* Diamond Staffing Solutions$^{SM}$ entered the market in May 2002. Accordingly, any rights DSSI had in the Marks were extinguished upon its dissolution and prior to Diamond Staffing Solutions$^{SM}$' formation.[5]

With respect to the second, evidence of third party use on wholly unrelated goods and services in an infringement claim may in certain limited circumstances be relevant, but only as to the overall *strength* of the Marks.—not to actual *ownership*. 2 McCarthy, Trademarks and Unfair Competition § 15:27, at 15-41; Eclipse Ass'n Ltd. v. Data General Corp., 894 F.2d 1114, 1119 (9th Cir. 1990) (noting that "[e]vidence of other unrelated potential infringers is irrelevant to claims of trademark infringement and unfair competition under federal law"); Charrette Corp. v. Bowater Communication Papers, Inc., 13 U.S.P.Q.2d 2040, 2043 (T.T.A.B. 1989) (stating that evidence of third party use on unrelated goods is irrelevant). Moreover, DSI does not present third-party use of the entire Marks, choosing instead to focus on use of "Diamond" with other terms. DSI's reliance on Massachusetts secretary of state records to prove third party use is also unavailing because DSI does not attempt to demonstrate how these entities *actually use* the "Diamond" term. Indeed, the significances of such references depend on a showing of *how the references are used in the*

---

[5] It is also apparent that no likelihood of confusion between a company handling asbestos removal and personnel placement would be found.

*marketplace.* Scarves by Vera, Inc. v. Todo Imports Ltd. (Inc.), 544 F.2d 1167, 1173 (2d. Cir. 1976); EMC Corp. v. Hewlett-Packard Co., 59 F. Supp. 2d 147, 151 (D. Mass. 1999). Finally, DSI's attempt to rely on third party use to diminish the distinctiveness of the Marks is highly suspect in light of the fact that DSI itself *filed for federal and state registration of the Diamond Staffing term.* See Casey Aff., ¶ 5, at 2. DSI cannot apply a double-standard by arguing that on the one hand, third-party use affects the distinctiveness of Diamond Staffing Solutions'$^{SM}$ Marks, but on the other hand, that same use is immaterial when DSI applied for its registrations. Such inconsistency only exemplifies the fatal flaws contained in DSI's arguments.

    2.    Plaintiff's Priority of Use In The Marks Extends Throughout The United States.

Diamond Staffing Solutions$^{SM}$ established nationwide common-law rights to the Marks prior to November, 2003, the date that DSI first started to market itself under the term "Diamond Staffing". When a senior user achieves nationwide recognition, a junior user is not an innocent user of the senior user's mark, even though the junior user may have never heard of the mark. Champions Golf Club v. Champions Golf Club, 78 F.3d 1111, 1124 (6th Cir. 1996); 4 McCarthy, Trademarks and Unfair Competition § 26:17, at 26-25; see Thrifty Rent-A-Car System, Inc. v. Thrift Cars, Inc., 639 F. Supp. 750, 753 (D. Mass. 1986), aff'd, 831 F.2d 1177 (1st Cir. 1987) (stating that "[a] party who has established a reputation in an area may acquire exclusive rights to its mark there, even though the product bearing the mark is unavailable").

Here, Diamond Staffing Solutions$^{SM}$ has achieved national prominence in the jewelry field since commencing operations in May 2002. In addition to the substantial use of the Marks in Massachusetts in 2002 and 2003, Diamond Staffing Solutions$^{SM}$ has placed numerous listings seeking candidates for its clients on www.monster.com (including listings seeking candidates for Massachusetts-based retail locations of clients); advertised in prominent national publications

Jewelers Circular Keystone ("JCK"), National Jewelers, Modern Jeweler, InStore Magazine, Professional Jeweler, and Coutour; and promoted itself through displays at the jewelry industry's largest trade show, JCK Las Vegas. DeVries Aff., ¶ 7, at 3. Diamond Staffing Solutions$^{SM}$ currently services approximately (60) clients, including J.C. Penney, Sterling Jewelers (with over 1,000 stores coast-to-coast, including the Kay Jewelers chain), Borsheim's Jewelers, and Swarovski A.G., and has contracted with Tiffany's. DeVries Aff., ¶ 9, at 3. Further, Diamond Staffing Solutions$^{SM}$ reputation has expanded outside the jewelry industry, as it has commenced providing personnel related services to Swarovski A.G. in the area of giftware, for example. DeVries Aff., ¶ 10, at 3. This evidence overwhelming demonstrates that by vigorously promoting its Marks in the marketplace, Diamond Staffing Solutions$^{SM}$ acquired nationwide common law rights in the Marks by the time DSI entered the marketplace in November, 2003.

   3. At Minimum, There Is A Genuine Issue Of Material Fact As To Whether A Likelihood Of Confusion Exists.

As noted above, the third element of the Boustany test -- use by another which is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship or approval of the services at issue – is satisfied by reference to the eight factor test laid out in Pignons S.A. de Mechanique de Precision v. Polaroid Corp., 657 F.2d 482, 487 (1st Cir. 1981). "These factors are not to be applied mechanically. Courts may consider other factors and may accord little weight to factors that are not helpful on the particular facts." Beacon Mutual Insurance Company v. OneBeacon Insurance Group, 376 F.3d 8, 15 (1st Cir. 2004).

At the hearing on plaintiff's Motion for Expedited Discovery, the Court itself acknowledged (at minimum) the existence of a genuine issue of material fact regarding proof of such confusion based on the current record:

> The marks are certainly substantially similar, Diamond Staffing Solutions, Inc. and Diamond Staffing, Inc. There is obviously a dispute about geographic coverage and the similarity of services and the channels of trade in which those services are advertised and sold, but there is at least a substantial possibility that there is an overlap or enough of an overlap that there would cause confusion for consumers of the services.

Transcript of May 9, 2005 Hearing at 32 (Papastavros Aff., Ex. 1). As set forth below in a review of the relevant factors, the Court's statement is supported by the current factual record:

- Similarity of the Marks: "The similarity of two marks 'is determined on the basis of the total effect of the designation....'" EMC Corporation v. Hewlett Packard Corporation, 59 F. Supp. 2d 147, 149 (D. Mass. 1999). Where it is inevitable that the public will shorten the name or mark, the shortened form provides the basis for comparison. Id. It is clear that this factor militates in favor of plaintiff, given that both companies market themselves under the term "Diamond Staffing", and that "Diamond Staffing" is the shortened form for "Diamond Staffing Solutions". Indeed, defendant has not raised this factor as a reason to justify granting of summary judgment.

- Similarity of Services: DSI misstates the law when it declares that Diamond Staffing Solutions$^{SM}$ must demonstrate that "it will lose customers or good will to another company in the *exact same business*" and that "the party seeking relief must demonstrate that the business entities are providing services that are identical." DSI's Motion at 6. Indeed, as McCarthy notes, "[t]he *vast majority* of modern decisions have adopted the rule that competition is *not necessary* for there to be a likelihood of confusion." 4 McCarthy, Trademarks and Unfair Competition § 24:13, at 24-29, 30 (emphasis added). The proper inquiry is whether there is likely to be consumer confusion as to the "association" of the two entities, or the "origin, sponsorship or approval of the services." 15 U.S.C. § 1125(a); see Northern Light Tech., Inc. v. Northern Lights Club, 97 F. Supp. 2d 96, 111 (D. Mass. 2000) (finding that the services offered under the marks were "sufficiently similar" even though they differed because the services "are likely to be related in the minds of the public"); Public Service Co. v. Nexus Energy Software, Inc., 36 F. Supp. 2d 436, 437 (D. Mass. 1999) (finding a likelihood of confusion where "although there are some differences in the services offered, both parties offer consumers information relating to energy services"). Here, both Diamond Staffing Solutions$^{SM}$ and DSI specialize in professional staffing services, the same class of services in USPTO records. Moreover, Diamond Staffing Solutions$^{SM}$ has begun to offer staffing services outside the jewelry industry, including to Swarovski AG in the area of giftware; and Diamond Staffing Solutions$^{SM}$ has reason to believe that DSI has offered staffing services in the jewelry industry, or would offer them if the circumstance arose. This factor also weighs in favor of plaintiff, and plaintiff believes that the expedited discovery permitted by the Court will shed additional light on the similarity of services. See Papastavros Aff., ¶ 8.

- Channels of Trade, Advertising, Class of Potential Users/Purchasers: These factors are considered together under First Circuit precedent. Equine Technologies, Inc. v. Equitechnology, Inc., 68 F.3d 542, 546 (1st Cir. 1995). Diamond Staffing Solutions[SM] and DSI both seek to obtain candidates for their clients by advertising and obtaining resumes through online sites such as www.monster.com. DeVries Aff., ¶ 15, at 4-5. Moreover, DSI advertises under the "Diamond Opportunities" section of its website that it offers sales positions, one of the classes of potential users that Diamond Staffing Solutions[SM] markets to. Papastavros Aff., ¶ 3, Ex. 2. Diamond Staffing Solutions[SM] believes that additional evidence demonstrating that these factors militate strongly in favor of plaintiff will be elicited during the course of expedited discovery. Papastavros Aff., ¶ 8.

- Actual Confusion: Even before conducting any formal discovery, Diamond Staffing Solutions[SM] is already aware of numerous instances of actual confusion in the marketplace – the most persuasive possible evidence in the likelihood of analysis inquiry. See Beacon Mut. Ins. Co. v. OneBeacon Ins. Group, 376 F.3d 8, 18 (1st Cir. 2004); KOS Pharms., Inc. v. Andrx Corp., 369 F.3d 700, 720 (3d Cir. 2004) ("even a few incidents" of actual confusion are "highly probative of the likelihood of confusion"); 3 McCarthy, McCarthy of Trademarks § 23:13, at 23-56. Actual confusion is commercially relevant if the alleged infringer's use of the mark "could inflict commercial injury in the form of…a diversion of sales, damage to goodwill, or loss of control over reputation." Beacon Mut. Ins. Co., 376 F.3d at 15. The current record demonstrates unambiguously that Diamond Staffing Solutions[SM] is losing goodwill and control over the reputation it has meticulously cultivated over the past several years as a result of marketplace confusion. Diamond Staffing Solutions[SM] has received numerous misdirected e-mails intended for DSI. DeVries Aff., ¶ 12, at 4; DeVries Aff.-2, ¶ 3, Ex. 3. Moreover, Diamond Staffing Solutions[SM] is aware of at least four instances in which clients or candidates looking for Diamond Staffing Solutions[SM] were confused by the services offered by DSI. DeVries Aff., ¶ 12, at 4. Diamond Staffing Solutions[SM] believes additional pertinent information concerning actual confusion will be unearthed in the discovery process, but even as it stands this factor favors a finding of a likelihood of confusion. Papastavros Aff., ¶ 8.

- Intent of Defendant In Adopting Mark: Given that DSI was aware of Diamond Staffing Solutions[SM] and its business when it changed its name and commenced business in November, 2004, this Court should ultimately infer bad faith intent by DSI in adopting the Diamond Staffing term. Proof that a defendant knew of plaintiff's mark at the time the defendant chose its mark is often bad faith and evidence of the defendant's intention to trade on the plaintiff's goodwill. Wynn Oil Co. v. Am. Way Serv. Corp., 943 F.2d 595, 603 (6th Cir. 1991); 3 McCarthy, Trademarks and Unfair Competition § 23:115, at 23-281. Here, DSI likely knew of Diamond Staffing Solutions[SM] by the time it registered its domain name, diamondstaffinginc.com, in September, 2003, because it likely would have registered diamondstaffing.com if such domain name was available, and because it likely visited Diamond Staffing Solutions'[SM] website before that point in time. DeVries Aff., ¶ 16, at 5. The expedited discovery permitted by this Court is also highly relevant to this factor. Papastavros Aff., ¶ 8.

- <u>Strength of Mark</u>: As set forth in the Verified Complaint, Diamond Staffing Solutions[SM]' Marks are distinctive, or alternatively Diamond Staffing Solutions[SM] will be able to demonstrate sufficient secondary meaning to demonstrate entitlement to protection. DSI's Motion does not seriously dispute this, claiming only that "the Plaintiff cannot demonstrate strength of a mark to which it has absolutely no ownership rights in this market [Massachusetts]." DSI's Motion at 12. As demonstrated <u>supra</u>, Diamond Staffing Solutions[SM] indeed retains priority of use over the Marks in Massachusetts and across the country.[6]

## CONCLUSION

Based on the foregoing, plaintiff Diamond Staffing Solutions, Inc. respectfully requests this Court to deny DSI's motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) and to deny DSI's motion for summary judgment in its entirety.

Respectfully submitted,

DIAMOND STAFFING SOLUTIONS, INC.

By its attorneys,

/s/ Gina M. McCreadie
Nicholas G. Papastavros (BBO#635742)
Michael L. Cornell (BBO # 651405)
Gina M. McCreadie (BBO # 661107)
NIXON PEABODY LLP
100 Summer Street
Boston, MA 02110-2131
(617) 345-1000 (telephone)
(617) 345-1300 (facsimile)

Dated: May 20, 2005

---

[6] The case DSI heavily relies on to support its strained arguments, <u>Bay State Sav. Bank v. Baystate Fin. Servs., LLC</u>, 338 F. Supp. 2d 181 (D. Mass. 2004), is wholly distinguishable on the facts of this case. In <u>Bay State</u>, the court found that plaintiff's mark was geographically descriptive and that secondary meaning had not been established. As set forth in the Verified Complaint, Diamond Staffing Solutions[SM]' Marks are distinctive, or alternatively Diamond Staffing Solutions[SM] will be able to demonstrate sufficient secondary meaning. Moreover, in <u>Bay State</u> – unlike the case at bar – the parties had co-existed for nearly *twenty years* in which they offered services in *different industries* (the plaintiff was a savings bank and the defendant offered insurance and investment related products) and there was *no showing of actual confusion* in the marketplace.