UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DIAMOND STAFFING SOLUTIONS, INC.

Plaintiff,

v.                                            Civil Action No. 05-40046-FDS

DIAMOND STAFFING, INC.,

Defendant.

**DIAMOND STAFFING SOLUTIONS' OPPOSITION TO DEFENDANTS' MOTION
FOR PROTECTIVE ORDER, AND MEMORANDUM IN SUPPORT OF ITS
EMERGENCY MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

On May 9, 2005, this Court explicitly ordered expedited discovery regarding the

"circumstances surrounding the registration of [Diamond Staffing, Inc.'s] domain name" and the

"circumstances surrounding the name change of the defendant to Diamond Staffing, Inc.

("DSI")" Transcript of May 9, 2005 Hearing at 34-35 (attached hereto as Exhibit 1). These

issues relate squarely to DSI's intent in using the "Diamond Staffing" mark, one of the

components of the cause of action for trademark infringement.

At every turn, DSI has relied on an "advice of counsel" defense to Diamond Staffing

Solutions'[sm] claim that DSI had a bad faith intent to trade off of plaintiff's reputation. In DSI's

Memorandum in Support of Its Motion to Dismiss ("DSI's Memo"), for example, it stated that

"[a]s to Diamond's intent in adopting its mark, the Affidavit of Mary Casey makes clear that the

name was selected because it was available and subject to trademark protection." See DSI's

Memo at 11. The affidavit and deposition testimony of DSI's President, Francis Vaccaro, and

DSI's Responses to Interrogatories are consistent with this position. See Exhibits 2, 3 and 4

attached hereto.  Now, DSI wants to use the privilege as a "sword and a shield," relying on Attorney Casey's opinion as a defense to bad faith intent but seeking to prevent Diamond Staffing Solutions<sup>sm</sup> from deposing Attorney Casey regarding the nature of her due diligence, searches and opinions.  This position runs contrary to black-letter law and the Court's May 9, 2005 Order, and should be rejected.

Simultaneously, DSI makes the irrelevant comparison between its size and that of the Plaintiff by pointing out that it is a multi-million dollar company with offices in 7 states.  Yet it expects this Court and Diamond Staffing Solutions<sup>sm</sup> to concede that it does not possess a single email responsive to Plaintiff's document requests, when the deposition testimony of its Rule 30(b)(6) witnesses evidences the fact that no sufficient search was conducted.

Accordingly, Defendant's Motion for Protective Order as to the Deposition of Attorney Mary Casey Pursuant to F.R.C.P. 26 (c) should be denied in its entirety, and Attorney Casey should be compelled to appear for her deposition as previously noticed on Friday, June 10 (or alternatively Wednesday, June 15).   Alternatively, DSI should be precluded from relying on the advice of counsel defense going forward.  DSI should also be compelled to produce all documents responsive to Requests Nos. 5 and 6 of Plaintiff's First Set of Document Requests, including all e-mails.[1]

## ARGUMENT

**A.     Defendant's Motion for Protective Order Should Be Denied.**

A party to an intellectual property dispute waives attorney-client privilege when it invokes the advice of legal counsel defense.  <u>VLT, Inc. v. Artesyn Techs., Inc.</u>, 198 F. Supp. 2d

---

[1]     The Casey deposition is only the second sought by Plaintiff (in addition to a Rule 30(b)(6) deposition), and thus falls squarely within the scope of the Court's Order regarding expedited discovery.

56, 57 (D. Mass. 2002); <u>Nitinol Medical Techs., Inc. v. AGA Med. Corp.</u>, 135 F. Supp. 2d 212, 217 (D. Mass. 2000); <u>Saint-Gobain/Norton Indus. Ceramics Corp. v. Gen. Elec. Corp.</u>, 884 F. Supp. 31, 33 (D. Mass. 1995); <u>Micron Separation, Inc. v. Pall Corp.</u>, 159 F.R.D. 361, 362 (D. Mass. 1995). Indeed, the U.S. Court of Appeals for the First Circuit has explicitly held that, when a party raises the advice of counsel defense, it places the nature of its lawyer's advice at issue, and thus waives attorney-client privilege with respect to relevant communications. <u>In re Keeper of Records</u>, 348 F.3d 16, 24-26 (1st Cir. 2003); <u>see also</u> <u>Minn. Specialty Crops, Inc. v. Minn. Wild Hockey Club, L.P.</u>, 210 F.R.D. 673, 675 (D. Minn. 2002); <u>Troublé v. The Wet Seal, Inc.</u>, 179 F. Supp. 2d 291, 304 (S.D.N.Y. 2001); <u>Dorr-Oliver Inc. v. Fluid-Quip, Inc.</u>, 834 F. Supp. 1008, 1012 (N.D. Ill. 1993).

In this case, DSI has asserted an advice of counsel defense, and has therefore waived attorney-client privilege for related communications. DSI's intent in adopting the mark "Diamond Staffing" is the seventh element in the eight-part test for likelihood of confusion. <u>See</u> <u>Boustany v. Boston Dental Group, Inc</u>, 42 F. Supp. 2d 100, 108 (D. Mass. 1999); <u>Pignons S.A. de Mecanique de Precision v. Polaroid Corp.</u>, 657 F.2d 482, 487 (1st Cir. 1981). As set forth above, the Court *explicitly* ruled that the circumstances surrounding the adoption of the mark were one of the subjects of expedited discovery. <u>See</u> Exhibit 1 at 34-35. Defendant has explicitly and repeatedly put its communications with its attorney, Mary C. Casey, Esq., squarely at issue with respect to this intent element:

1.  In support of its Motion to Dismiss for Failure to State a Claim, Defendant denied bad intent on the grounds that it relied upon the advice of its counsel, Casey: "As to Diamond's intent in adopting its mark, the Affidavit of Mary Casey makes it clear that the name was selected because it was available and subject to trademark registration." Motion to Dismiss for Failure to State a Claim, at p. 11.

2.      In Frank Vaccaro's affidavit, Vaccaro unambiguously stated that he relied upon Casey's advice when adopting the mark: "Before selecting our name we proposed several names to our attorney who checked the names on various databases to determine whether the names were available and free for our use. She approved our usage of Diamond Staffing following her due diligence investigation." Affidavit of Francis Vaccaro in Support of the Defendant's Motion to Dismiss for Failure to State a Claim, at ¶ 5 (Exhibit 2 attached hereto).

3.      Defendant filed the Affidavit of Mary C. Casey, Esq. in Support of the Motion to Dismiss, delineating her purported steps taken to research the use of the mark in order to deny liability for trademark infringement. Affidavit of Mary C. Casey, Esq. in Support of the Defendant's Motion to Dismiss for Failure to State a Claim, at ¶¶ 3,4 (Exhibit 5 attached hereto).

4.      In Response to Interrogatory Number 2, Defendant stated: "Francis Vaccaro in conjunction with Attorney Mary Casey conducted exhaustive due diligence as to name selection." Responses to First Set of Interrogatories, at p. 2 (Exhibit 4 attached hereto).

5.      During the Deposition of Frank Vaccaro, Vaccaro repeatedly stated that he relied upon Casey's advice regarding the mark's background research and adoption. See Deposition of Frank Vaccaro ("Vaccaro Dep."), at pp. 66-67, 68, 71, 72, 73-75, 77-78 (Exhibit 3 attached hereto).

By asserting an advice of counsel defense, Defendant has clearly injected its reliance on the opinion of its counsel, Casey, into this case. Indeed, opposing counsel has repeatedly recognized as much, stating that "Diamond Staffing acknowledges that Attorney Casey has relevant information in this matter pertaining to the due diligence search conducted by Diamond Staffing prior to its use of the mark in 2003...[i]n fact, her testimony, which would be helpful to Diamond Staffing, *might ultimately be the key testimony if this matter were to proceed to trial*." Motion for Protective Order, ¶ 8, at 3; accord Vaccaro Dep., at 75-76, 78, 79 (Exhibit 3 attached hereto). Moreover, DSI has not even attempted to preserve the privilege, deliberately injecting Attorney Casey's diligence and opinion into the midst of this dispute. See Motion for Protective Order, ¶ 11, at 4 ("Diamond Staffing's counsel permitted Mr. Vaccaro to testify as to conversations with Attorney Casey in order to permit the Plaintiff to discover how Diamond Staffing selected its

name…")  Because Defendant has relied on its counsel's advice to defend itself, it has waived its

attorney-client privilege with respect to those communications upon which it relied.  Artesyn,

198 F. Supp. 2d at 57; Nitinol, 135 F. Supp. 2d at 217; Saint-Gobain, 884 F. Supp. at 33; Micron,

159 F.R.D. at 362.

> Accordingly, this Court should deny Defendant's Motion for a Protective Order, and

either compel Attorney Casey's deposition on June 10, 2005 (or at latest June 15, 2005) or

alternatively preclude DSI from relying on advice of counsel.  In sum, DSI cannot use the

attorney-client privilege as both a shield and a sword.  See In re Keeper of Records, 348 F.3d 16,

24 (1st Cir. 2003) ("Implying a subject matter waiver [when a party raises an advice of counsel

defense] ensures fairness because it disables litigants from using the attorney-client privilege as

both a sword and a shield. Were the law otherwise, the client could selectively disclose

fragments helpful to its cause, entomb other (unhelpful) fragments, and in that way kidnap the

truth-seeking process").[2]

### B.    Plaintiff's Cross-Motion For The Production of Documents Should Be Granted.

> Pursuant to Fed. R. Civ. P. 37, Diamond Staffing Solutions[sm] also cross-moves this Court

to compel DSI to produce documents in response to Plaintiff's Amended First Request for

Production of Documents to Defendant Diamond Staffing, Inc.  (hereinafter "document

requests") (attached hereto as Exhibit 6).  Specifically, Defendant claims to be a "Massachusetts-

based temp agency with ten offices in multiple states and more than 1400 weekly workers on its

---

[2]    DSI's alternative position that "if the Court views attorney discovery as appropriate at this juncture, allowances should be made for Diamond Staffing to depose the Plaintiff's three attorneys" (Motion for Protective Order, ¶ 18, at 6) is a complete red herring and should be rejected outright.  Unlike DSI, plaintiff has not relied on advice of counsel as a defense, and has not waived applicable privileges.  Moreover, admittedly unlike Ms. Casey, at a minimum two of the three attorneys (Messrs. Hood and Tomzarian) have *no factual knowledge relevant to the instant dispute*.  Indeed, Attorney Tomzarian was retained for a short period of time relative to an MCAD claim, and Attorney Hood is Diamond Staffing Solutions[sm'] corporate attorney.

payroll and with yearly sales in excess of $30,000,000." <u>See</u> Motion for Protective Order at ¶ 2.

However, the Defendant *<u>has not produced a single electronic mail message in response to</u>*

*<u>Plaintiff's document requests.</u>*

Plaintiff's document requests seek, *inter alia*,

"All documents concerning any request or inquiry You received either from customers, clients and/or candidates (i) about any and all temporary or permanent employment in the jewelry industry, or (ii) intended for Diamond Staffing Solutions, Inc. and/or Suzanne DeVries." Request No. 5, Amended First Request for Production of Documents to Defendant Diamond Staffing, Inc.

and,

"All documents concerning any customer, client and/or candidate confusion of any type between DSI and Diamond Staffing Solutions, Inc., including (i) confusion of any type regarding the parties' domain names/web site addresses, and (ii) the subject matter of Annie Moore's May 6, 2005 Affidavit." Request No. 6, Amended First Request for Production of Documents to Defendant Diamond Staffing, Inc.

As evidenced by letters dated May 30, 2005 and June 7, 2005, copies of which are

attached hereto as Exhibits 7 and 8, counsel for Diamond Staffing Solutions℠ has indicated to

DSI's counsel on multiple occasions that Plaintiff is aware of at least one instance in which

Defendant should possess electronic documents responsive to Plaintiff's document requests.

Plaintiff suspects other responsive electronic documents exist within DSI's possession, custody

or control, particularly considering that DSI has produced *no* electronic mail messages as part of

its document production and DSI's inadequate search efforts. <u>See</u> <u>infra</u>.  Such electronic mail

messages bear directly upon (among other things) the issue of customer confusion with respect to

the parties' respective use of the Diamond Staffing service mark, and are therefore relevant to the

Court's evaluation of Plaintiff's claim that the Defendant is infringing upon Plaintiff's

trademark.

6

Defendant's counsel has responded to Plaintiff's repeated requests for the production of Defendant's emails by stating that "any such emails were deleted and no back up was kept." See Letter of Attorney Robert N. Meltzer to Attorney Nicholas G. Papastavros, dated June 8, 2005 (attached hereto as Exhibit 9).

However, the *person in charge* of information technology at DSI, Mark Donabedian, testified that he did not participate in any search for emails responsive to Plaintiff's document requests despite being told to do so by the Defendant's President, Francis G. Vaccaro. See Deposition of Mark S. Donabedian (hereinafter, "Donabedian Depo."), dated June 1, 2005 at pp. 9, 52 (Exhibit 10 attached hereto); Deposition of Francis G. Vaccaro (hereinafter "Vaccaro Depo."), dated June 1, 2005, at pp. 10-11. Indeed, Mr. Donabedian testified that *he did not know one way or another* whether or not emails relevant to the claims in this dispute exist or do not exist. Donabedian Depo. at p. 52.

Moreover, Mr. Vaccaro also instructed Annie Moore, Defendant's Director of Professional Placement, to search for "past email information." See Vaccaro Depo. at p. 11.[3] Ms. Moore's deposition testimony makes clear that her search for emails was limited only to her own computer and email account. See, Deposition of Annie Moore, dated June 1, 2005, at pp. 10-11. Therefore, Ms. Moore's search did not include any emails maintained on the company's email server or on the computers of the approximately 1400 weekly employees that the Defendant claims to employ. See Motion at ¶ 2.

---

[3]    It is also important to note that Mr. Vaccaro also instructed the Defendant's counsel Mary Casey to search for documents responsive to Plaintiff's documents requests but Defendant has not confirmed whether such a search took place or whether it yielded any non-privileged copies of relevant, responsive emails. See, Vaccaro Depo. at p. 10.

Mr. Donabedian testified that Diamond Staffing, Inc. does not maintain any kind of backup of deleted emails. See, Donabedian Depo. at p. 50. However, it is extremely unlikely that a company "with ten offices in multiple states and more than 1400 weekly workers on it payroll and with yearly sales in excess of $30,000,000" does not maintain an email server which automatically backs up the company's emails. In fact, an internet search reveals that the Defendant's domain name, "diamondstaffinginc.com" is maintained by the domain servers Deathstar.Kurser.net and NS2Lightband.com. Defendant has not clearly articulated whether its diligent search for responsive documents within its custody or control included a search of archived emails maintained by its domain servers.

In light of these facts, it is abundantly clear that the Defendant has failed to meet its obligations to conduct a good faith search of the electronic files within its custody or control and to produce all responsive e-mails and computer archived documents. Accordingly, Plaintiff's Cross-Motion for the Production of Documents should be granted, and DSI should be compelled to produce all responsive documents no later than Wednesday, June 15, 2005.

Finally, should it be determined that the Defendant destroyed or deleted emails in violation of its affirmative duty to maintain such documents, then Plaintiff reserves the right to seek costs and sanctions in connection with Defendant's spoliation of evidence. See Fletcher v. Dorchester Mut. Ins. Co., 437 Mass. 544, 550 (2002) ("persons who are actually involved in litigation or know that they will likely be involved have a duty to preserve evidence for use by others who will also be involved in that litigation"); Keene v. Brigham and Women's Hospital, 439 Mass. 223, 234 (2003) ("The doctrine of spoliation permits the imposition of sanctions and remedies for the destruction of evidence in civil litigation . . . based on the premise that a party who has negligently or intentionally lost or destroyed evidence known to be relevant for an

upcoming legal proceeding should be held accountable for any unfair prejudice that results. Sanctions may be appropriate for the spoliation of evidence that occurs even before an action has been commenced, if a litigant or its expert knows or reasonably should know that the evidence might be relevant to a possible action.").

## CONCLUSION

Based on the foregoing, Diamond Staffing Solutions[sm] respectfully requests this Court to (1) deny DSI's Motion for Protective Order and compel Attorney Casey's deposition testimony as noticed on May 10, 2005 (or alternatively May 15, 2005), or alternatively preclude DSI from relying on an advice of counsel defense; and (2) compel production of electronic documents responsive to Diamond Staffing Solutions[sm]' requests for production of documents, in particular Request Nos. 5 and 6.

Respectfully submitted,

DIAMOND STAFFING SOLUTIONS, INC.

By its attorneys,


/s/ Nicholas G. Papastavros
Nicholas G. Papastavros, BBO #635742
Michael L. Cornell, BBO #651405
NIXON PEABODY LLP
100 Summer Street
Boston, MA  02110
(617) 345-1000

Dated: June 9, 2005

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DIAMOND STAFFING SOLUTIONS, INC.

Plaintiff,

v.

DIAMOND STAFFING, INC.,

Defendant.

Civil Action No. 05-40046-FDS

**DIAMOND STAFFING SOLUTIONS' OPPOSITION TO DEFENDANTS' MOTION
FOR PROTECTIVE ORDER, AND MEMORANDUM IN SUPPORT OF ITS
EMERGENCY MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

On May 9, 2005, this Court explicitly ordered expedited discovery regarding the

"circumstances surrounding the registration of [Diamond Staffing, Inc.'s] domain name" and the

"circumstances surrounding the name change of the defendant to Diamond Staffing, Inc.

("DSI")" Transcript of May 9, 2005 Hearing at 34-35 (attached hereto as Exhibit 1).  These

issues relate squarely to DSI's intent in using the "Diamond Staffing" mark, one of the

components of the cause of action for trademark infringement.

At every turn, DSI has relied on an "advice of counsel" defense to Diamond Staffing

Solutions'sm claim that DSI had a bad faith intent to trade off of plaintiff's reputation.  In DSI's

Memorandum in Support of Its Motion to Dismiss ("DSI's Memo"), for example, it stated that

"[a]s to Diamond's intent in adopting its mark, the Affidavit of Mary Casey makes clear that the

name was selected because it was available and subject to trademark protection."  See DSI's

Memo at 11.  The affidavit and deposition testimony of DSI's President, Francis Vaccaro, and

DSI's Responses to Interrogatories are consistent with this position.  See Exhibits 2, 3 and 4

attached hereto.  Now, DSI wants to use the privilege as a "sword and a shield,"  relying on

Attorney Casey's opinion as a defense to bad faith intent but seeking to prevent Diamond

Staffing Solutions[sm] from deposing Attorney Casey regarding the nature of her due diligence,

searches and opinions.  This position runs contrary to black-letter law and the Court's May 9,

2005 Order, and should be rejected.

Simultaneously, DSI makes the irrelevant comparison between its size and that of the

Plaintiff by pointing out that it is a multi-million dollar company with offices in 7 states.  Yet it

expects this Court and Diamond Staffing Solutions[sm] to concede that it does not possess a single

email responsive to Plaintiff's document requests, when the deposition testimony of its Rule

30(b)(6) witnesses evidences the fact that no sufficient search was conducted.

Accordingly, Defendant's Motion for Protective Order as to the Deposition of Attorney

Mary Casey Pursuant to F.R.C.P. 26 (c) should be denied in its entirety, and Attorney Casey

should be compelled to appear for her deposition as previously noticed on Friday, June 10 (or

alternatively Wednesday, June 15).   Alternatively, DSI should be precluded from relying on the

advice of counsel defense going forward.  DSI should also be compelled to produce all

documents responsive to Requests Nos. 5 and 6 of Plaintiff's First Set of Document Requests,

including all e-mails.[1]

## ARGUMENT

**A.    Defendant's Motion for Protective Order Should Be Denied.**

A party to an intellectual property dispute waives attorney-client privilege when it

invokes the advice of legal counsel defense.  VLT, Inc. v. Artesyn Techs., Inc., 198 F. Supp. 2d

---

[1]    The Casey deposition is only the second sought by Plaintiff (in addition to a Rule 30(b)(6) deposition), and thus falls squarely within the scope of the Court's Order regarding expedited discovery.

56, 57 (D. Mass. 2002); <u>Nitinol Medical Techs., Inc. v. AGA Med. Corp.</u>, 135 F. Supp. 2d 212,

217 (D. Mass. 2000); <u>Saint-Gobain/Norton Indus. Ceramics Corp. v. Gen. Elec. Corp.</u>, 884 F.

Supp. 31, 33 (D. Mass. 1995); <u>Micron Separation, Inc. v. Pall Corp.</u>, 159 F.R.D. 361, 362 (D.

Mass. 1995).  Indeed, the U.S. Court of Appeals for the First Circuit has explicitly held that,

when a party raises the advice of counsel defense, it places the nature of its lawyer's advice at

issue, and thus waives attorney-client privilege with respect to relevant communications.  <u>In re</u>

<u>Keeper of Records</u>, 348 F.3d 16, 24-26 (1st Cir. 2003); <u>see also</u> <u>Minn. Specialty Crops, Inc. v.</u>

<u>Minn. Wild Hockey Club, L.P.</u>, 210 F.R.D. 673, 675 (D. Minn. 2002); <u>Troublé v. The Wet Seal,</u>

<u>Inc.</u>, 179 F. Supp. 2d 291, 304 (S.D.N.Y. 2001); <u>Dorr-Oliver Inc. v. Fluid-Quip, Inc.</u>, 834 F.

Supp. 1008, 1012 (N.D. Ill. 1993).

      In this case, DSI has asserted an advice of counsel defense, and has therefore waived

attorney-client privilege for related communications.  DSI's intent in adopting the mark

"Diamond Staffing" is the seventh element in the eight-part test for likelihood of confusion.  <u>See</u>

<u>Boustany v. Boston Dental Group, Inc</u>, 42 F. Supp. 2d 100, 108 (D. Mass. 1999); <u>Pignons S.A.</u>

<u>de Mecanique de Precision v. Polaroid Corp.</u>, 657 F.2d 482, 487 (1st Cir. 1981).  As set forth

above, the Court *explicitly* ruled that the circumstances surrounding the adoption of the mark

were one of the subjects of expedited discovery.  <u>See</u> Exhibit 1 at 34-35.  Defendant has

explicitly and repeatedly put its communications with its attorney, Mary C. Casey, Esq., squarely

at issue with respect to this intent element:

    1.       In support of its Motion to Dismiss for Failure to State a Claim, Defendant
                denied bad intent on the grounds that it relied upon the advice of its counsel,
                Casey: "As to Diamond's intent in adopting its mark, the Affidavit of Mary
                Casey makes it clear that the name was selected because it was available and
                subject to trademark registration."  Motion to Dismiss for Failure to State a
                Claim, at p. 11.

2.    In Frank Vaccaro's affidavit, Vaccaro unambiguously stated that he relied upon Casey's advice when adopting the mark: "Before selecting our name we proposed several names to our attorney who checked the names on various databases to determine whether the names were available and free for our use. She approved our usage of Diamond Staffing following her due diligence investigation." Affidavit of Francis Vaccaro in Support of the Defendant's Motion to Dismiss for Failure to State a Claim, at ¶ 5 (Exhibit 2 attached hereto).

3.    Defendant filed the Affidavit of Mary C. Casey, Esq. in Support of the Motion to Dismiss, delineating her purported steps taken to research the use of the mark in order to deny liability for trademark infringement. Affidavit of Mary C. Casey, Esq. in Support of the Defendant's Motion to Dismiss for Failure to State a Claim, at ¶¶ 3,4 (Exhibit 5 attached hereto).

4.    In Response to Interrogatory Number 2, Defendant stated: "Francis Vaccaro in conjunction with Attorney Mary Casey conducted exhaustive due diligence as to name selection." Responses to First Set of Interrogatories, at p. 2 (Exhibit 4 attached hereto).

5.    During the Deposition of Frank Vaccaro, Vaccaro repeatedly stated that he relied upon Casey's advice regarding the mark's background research and adoption. See Deposition of Frank Vaccaro ("Vaccaro Dep."), at pp. 66-67, 68, 71, 72, 73-75, 77-78 (Exhibit 3 attached hereto).

By asserting an advice of counsel defense, Defendant has clearly injected its reliance on the opinion of its counsel, Casey, into this case. Indeed, opposing counsel has repeatedly recognized as much, stating that "Diamond Staffing acknowledges that Attorney Casey has relevant information in this matter pertaining to the due diligence search conducted by Diamond Staffing prior to its use of the mark in 2003...[i]n fact, her testimony, which would be helpful to Diamond Staffing, *might ultimately be the key testimony if this matter were to proceed to trial*." Motion for Protective Order, ¶ 8, at 3; accord Vaccaro Dep., at 75-76, 78, 79 (Exhibit 3 attached hereto). Moreover, DSI has not even attempted to preserve the privilege, deliberately injecting Attorney Casey's diligence and opinion into the midst of this dispute. See Motion for Protective Order, ¶ 11, at 4 ("Diamond Staffing's counsel permitted Mr. Vaccaro to testify as to conversations with Attorney Casey in order to permit the Plaintiff to discover how Diamond Staffing selected its

name...") Because Defendant has relied on its counsel's advice to defend itself, it has waived its attorney-client privilege with respect to those communications upon which it relied. Artesyn, 198 F. Supp. 2d at 57; Nitinol, 135 F. Supp. 2d at 217; Saint-Gobain, 884 F. Supp. at 33; Micron, 159 F.R.D. at 362.

Accordingly, this Court should deny Defendant's Motion for a Protective Order, and either compel Attorney Casey's deposition on June 10, 2005 (or at latest June 15, 2005) or alternatively preclude DSI from relying on advice of counsel. In sum, DSI cannot use the attorney-client privilege as both a shield and a sword. See In re Keeper of Records, 348 F.3d 16, 24 (1st Cir. 2003) ("Implying a subject matter waiver [when a party raises an advice of counsel defense] ensures fairness because it disables litigants from using the attorney-client privilege as both a sword and a shield. Were the law otherwise, the client could selectively disclose fragments helpful to its cause, entomb other (unhelpful) fragments, and in that way kidnap the truth-seeking process").[2]

### B.    Plaintiff's Cross-Motion For The Production of Documents Should Be Granted.

Pursuant to Fed. R. Civ. P. 37, Diamond Staffing Solutions[sm] also cross-moves this Court to compel DSI to produce documents in response to Plaintiff's Amended First Request for Production of Documents to Defendant Diamond Staffing, Inc. (hereinafter "document requests") (attached hereto as Exhibit 6). Specifically, Defendant claims to be a "Massachusetts-based temp agency with ten offices in multiple states and more than 1400 weekly workers on its

---

[2] DSI's alternative position that "if the Court views attorney discovery as appropriate at this juncture, allowances should be made for Diamond Staffing to depose the Plaintiff's three attorneys" (Motion for Protective Order, ¶ 18, at 6) is a complete red herring and should be rejected outright. Unlike DSI, plaintiff has not relied on advice of counsel as a defense, and has not waived applicable privileges. Moreover, admittedly unlike Ms. Casey, at a minimum two of the three attorneys (Messrs. Hood and Tomzarian) have *no factual knowledge relevant to the instant dispute*. Indeed, Attorney Tomzarian was retained for a short period of time relative to an MCAD claim, and Attorney Hood is Diamond Staffing Solutions[sm]' corporate attorney.

payroll and with yearly sales in excess of $30,000,000." See Motion for Protective Order at ¶ 2.

However, the Defendant *has not produced a single electronic mail message in response to Plaintiff's document requests.*

Plaintiff's document requests seek, *inter alia*,

> "All documents concerning any request or inquiry You received either from customers, clients and/or candidates (i) about any and all temporary or permanent employment in the jewelry industry, or (ii) intended for Diamond Staffing Solutions, Inc. and/or Suzanne DeVries." Request No. 5, Amended First Request for Production of Documents to Defendant Diamond Staffing, Inc.

and,

> "All documents concerning any customer, client and/or candidate confusion of any type between DSI and Diamond Staffing Solutions, Inc., including (i) confusion of any type regarding the parties' domain names/web site addresses, and (ii) the subject matter of Annie Moore's May 6, 2005 Affidavit." Request No. 6, Amended First Request for Production of Documents to Defendant Diamond Staffing, Inc.

As evidenced by letters dated May 30, 2005 and June 7, 2005, copies of which are attached hereto as Exhibits 7 and 8, counsel for Diamond Staffing Solutions℠ has indicated to DSI's counsel on multiple occasions that Plaintiff is aware of at least one instance in which Defendant should possess electronic documents responsive to Plaintiff's document requests. Plaintiff suspects other responsive electronic documents exist within DSI's possession, custody or control, particularly considering that DSI has produced *no* electronic mail messages as part of its document production and DSI's inadequate search efforts. See infra. Such electronic mail messages bear directly upon (among other things) the issue of customer confusion with respect to the parties' respective use of the Diamond Staffing service mark, and are therefore relevant to the Court's evaluation of Plaintiff's claim that the Defendant is infringing upon Plaintiff's trademark.

Defendant's counsel has responded to Plaintiff's repeated requests for the production of Defendant's emails by stating that "any such emails were deleted and no back up was kept." See Letter of Attorney Robert N. Meltzer to Attorney Nicholas G. Papastavros, dated June 8, 2005 (attached hereto as Exhibit 9).

However, the *person in charge* of information technology at DSI, Mark Donabedian, testified that he did not participate in any search for emails responsive to Plaintiff's document requests despite being told to do so by the Defendant's President, Francis G. Vaccaro. See Deposition of Mark S. Donabedian (hereinafter, "Donabedian Depo."), dated June 1, 2005 at pp. 9, 52 (Exhibit 10 attached hereto); Deposition of Francis G. Vaccaro (hereinafter "Vaccaro Depo."), dated June 1, 2005, at pp. 10-11. Indeed, Mr. Donabedian testified that *he did not know one way or another* whether or not emails relevant to the claims in this dispute exist or do not exist. Donabedian Depo. at p. 52.

Moreover, Mr. Vaccaro also instructed Annie Moore, Defendant's Director of Professional Placement, to search for "past email information." See Vaccaro Depo. at p. 11.[3] Ms. Moore's deposition testimony makes clear that her search for emails was limited only to her own computer and email account. See, Deposition of Annie Moore, dated June 1, 2005, at pp. 10-11. Therefore, Ms. Moore's search did not include any emails maintained on the company's email server or on the computers of the approximately 1400 weekly employees that the Defendant claims to employ. See Motion at ¶ 2.

---

[3]    It is also important to note that Mr. Vaccaro also instructed the Defendant's counsel Mary Casey to search for documents responsive to Plaintiff's documents requests but Defendant has not confirmed whether such a search took place or whether it yielded any non-privileged copies of relevant, responsive emails. See, Vaccaro Depo. at p. 10.

Mr. Donabedian testified that Diamond Staffing, Inc. does not maintain any kind of backup of deleted emails. See, Donabedian Depo. at p. 50. However, it is extremely unlikely that a company "with ten offices in multiple states and more than 1400 weekly workers on it payroll and with yearly sales in excess of $30,000,000" does not maintain an email server which automatically backs up the company's emails. In fact, an internet search reveals that the Defendant's domain name, "diamondstaffinginc.com" is maintained by the domain servers Deathstar.Kurser.net and NS2Lightband.com. Defendant has not clearly articulated whether its diligent search for responsive documents within its custody or control included a search of archived emails maintained by its domain servers.

In light of these facts, it is abundantly clear that the Defendant has failed to meet its obligations to conduct a good faith search of the electronic files within its custody or control and to produce all responsive e-mails and computer archived documents. Accordingly, Plaintiff's Cross-Motion for the Production of Documents should be granted, and DSI should be compelled to produce all responsive documents no later than Wednesday, June 15, 2005.

Finally, should it be determined that the Defendant destroyed or deleted emails in violation of its affirmative duty to maintain such documents, then Plaintiff reserves the right to seek costs and sanctions in connection with Defendant's spoliation of evidence. See Fletcher v. Dorchester Mut. Ins. Co., 437 Mass. 544, 550 (2002) ("persons who are actually involved in litigation or know that they will likely be involved have a duty to preserve evidence for use by others who will also be involved in that litigation"); Keene v. Brigham and Women's Hospital, 439 Mass. 223, 234 (2003) ("The doctrine of spoliation permits the imposition of sanctions and remedies for the destruction of evidence in civil litigation . . . based on the premise that a party who has negligently or intentionally lost or destroyed evidence known to be relevant for an

8

upcoming legal proceeding should be held accountable for any unfair prejudice that results. Sanctions may be appropriate for the spoliation of evidence that occurs even before an action has been commenced, if a litigant or its expert knows or reasonably should know that the evidence might be relevant to a possible action.").

## CONCLUSION

Based on the foregoing, Diamond Staffing Solutions<sup>sm</sup> respectfully requests this Court to (1) deny DSI's Motion for Protective Order and compel Attorney Casey's deposition testimony as noticed on May 10, 2005 (or alternatively May 15, 2005), or alternatively preclude DSI from relying on an advice of counsel defense; and (2) compel production of electronic documents responsive to Diamond Staffing Solutions<sup>sm</sup>' requests for production of documents, in particular Request Nos. 5 and 6.

Respectfully submitted,

DIAMOND STAFFING SOLUTIONS, INC.

By its attorneys,


/s/ Michael L. Cornell
Michael L. Cornell, BBO #651405
Nicholas G. Papastavros, BBO #635742
NIXON PEABODY LLP
100 Summer Street
Boston, MA  02110
(617) 345-1000

Dated: June 9, 2005

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

## CLERK'S NOTICE

This document can not be scanned due to its size, or the way in which it was bound.

The original is available for viewing in the Clerk's Office.