UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

)
**DIAMOND STAFFING SOLUTIONS, INC.,** )
)
  **Plaintiff,** )
) 05-40046-FDS
  **v.** )
)
**DIAMOND STAFFING, INC.,** )
)
  **Defendant.** )
)

**MEMORANDUM AND ORDER ON PLAINTIFF'S EMERGENCY MOTION FOR
ENTRY OF SANCTIONS AND/OR TO COMPEL RESPONSES TO DEPOSITION
QUESTIONS AND DEFENDANT'S CROSS-MOTION FOR A PROTECTIVE ORDER**

**SAYLOR, J.**

This is a trademark dispute involving the use of the name "Diamond Staffing" to describe personnel placement businesses. Currently pending before the Court are a motion by the plaintiff, Diamond Staffing Solutions, Inc. ("DSS"), for entry of sanctions and/or to compel responses to deposition questions and a cross-motion by the defendant, Diamond Staffing, Inc. ("DSI"), for a protective order. Both motions involve the deposition testimony of one of the defendant's trial counsel, who also advised the defendant with respect to the selection of its corporate name.

**I.    Background**

On March 14, 2005, plaintiff DSS filed a complaint in this Court alleging that, among other things, defendant DSI is infringing its service mark. On April 29, 2005, DSS filed an emergency motion to expedite discovery, the stated goal of which was to obtain evidentiary support for an intended motion for preliminary injunction. DSI opposed the discovery motion and filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) or for summary judgment; it has not

yet answered the complaint.

After a hearing on May 9, 2005, the Court found good cause to permit certain expedited discovery to occur before the Fed. R. Civ. P. 16 scheduling conference. Specifically, the Court allowed the parties to take discovery of the following categories of information related to the merits of DSS's infringement claim: (1) the circumstances surrounding the registration of DSI's domain name; (2) the circumstances surrounding the name change of the defendant to "Diamond Staffing, Inc."; (3) instances of actual confusion among clients, potential clients, or potential employees; (4) channels of advertising, marketing, and promotion; and (5) the nature of the clients that each party serves.

After the Court's May 9 order, DSS subpoenaed Mary Casey, an attorney, to testify at a deposition. Ms. Casey provided certain advice to DSI relating to the selection of its corporate name, and she also has appeared in this case as trial counsel. In response, DSI moved to quash the subpoena or for a protective order prohibiting the deposition, contending that the taking of the deposition of Ms. Casey during this expedited period of discovery was invasive and outside the Court's May 9, 2005 order. With respect to the substance of Ms. Casey's testimony, DSI stated:

> [DSI] acknowledges that Attorney Casey has relevant information in this matter pertaining to the due diligence search conducted by [DSI] prior to its use of the mark in 2003, and pertaining to [DSI's] prior registration of the mark ahead of the [p]laintiff. In fact, her testimony . . . might ultimately be the key testimony if this matter were to proceed to trial.

Docket #26, ¶ 8. DSI did not specifically invoke the attorney-client privilege to block or limit Ms. Casey's testimony.

DSS argued in response that DSI waived the privilege by claiming reliance on Ms. Casey's legal advice. DSS identified several places in DSI's filings that it claims demonstrate that DSI is

2

asserting an advice-of-counsel defense; these include statements by Ms. Casey and Francis Vaccaro, the company president, that describe Ms. Casey's due-diligence investigation and DSI's reliance on Ms. Casey's advice in adopting the name.

For example, in his affidavit, Mr. Vaccaro stated:

> Before selecting our name we proposed several names to our attorney who checked the names on various databases to determine whether the names were available and free for our use. She approved our usage of Diamond Staffing following her due diligence investigation. Because we intended to engage in rapid growth and brand marketing, it was important for us to pick a name that was not previously subject to trademark protection by another company.

Affidavit of Francis Vaccaro in Support of the Defendant's Motion to Dismiss for Failure to State a Claim, ¶ 5. Similarly, in her affidavit, Ms. Casey described the steps she took to research the availability of the "Diamond Staffing" name, after which she "called [her] client and told the name 'Diamond Staffing' was available." Affidavit of Mary C. Casey, Esq. in Support of the Defendant's Motion to Dismiss for Failure to State a Claim, ¶¶ 3,4. In the motion to dismiss itself, DSI stated, "As to [DSI's] intent in adopting its mark, the Affidavit of Mary Casey makes it clear that the name was selected because it was available and subject to trademark registration." Docket #7, at 11.

The Court held a hearing on DSI's motion to quash or for a protective order on June 9, 2005. At the outset, the Court expressed its understanding that there was "no claim of attorney/client privilege or work product" with respect to Ms. Casey's testimony regarding the due diligence investigation. Later, the Court stated, "You've raised an advice of counsel defense, [so] that whatever privilege might otherwise attach is—is gone and she is to testify about these trademark issues." DSI did not contradict the Court's statement or attempt to correct the Court's

3

understanding.[1]  As such, and given that Ms. Casey's testimony was conceded by DSI to be highly relevant, the Court found that the proposed deposition did not violate the limitations placed on discovery and ordered that the deposition go forward.

Ms. Casey's deposition commenced June 17, 2005.  Ms. Casey testified about a wide variety of topics, including the factual circumstances of the due diligence she undertook before her client adopted its corporate name.  She did, however, refuse to answer certain questions on grounds of attorney-client privilege.  Specifically, it appears that Ms. Casey refused to answer questions involving direct communications of legal advice she had with DSI.[2]  It is that refusal to answer that underlies the current motion for sanctions or to compel.

## II.     The Motion for Sanctions

DSS filed the present motion on June 24, 2005.  DSS contends that DSI has asserted an advice-of-counsel defense, and thus DSI has waived the attorney-client privilege with respect to the due diligence performed by Ms. Casey in connection with the selection of DSI's name in 2003—including the advice she gave to DSI in the summer and fall of 2003 regarding the adoption and use of the corporate name.

---

[1] The only concerns specifically stated by DSI with respect to the attorney-client privilege related to Ms. Casey's involvement with (1) this litigation as trial counsel and (2) unrelated business matters of Mr. Vaccaro.

[2] For example, when asked by counsel for DSS, "With respect to 'Diamond Staffing,' what did you do?," Ms. Casey responded, "I checked with the Patent and Trademark Office and the Secretary of State's Office and the states where Frank [Vaccaro] was going to conduct business."  Transcript at 89.  But when asked by counsel for DSS, "What advice, if any, did you give to Mr. Vaccaro regarding the availability of 'Diamond Staffing, Inc.' as a name for a company?," Ms. Casey refused to answer.  Transcript at 103.

DSS's motion, which relies upon Fed. R. Civ. P. 37(b)(2), seeks the following relief: (1) an order establishing that DSI acted in bad faith when it adopted its name in 2003 or precluding DSI from contesting that it acted in bad faith when it adopted its name; (2) an order compelling DSI and/or Ms. Casey to pay its expenses relating to this matter, including expenses and attorneys' fees relating to the June 17, 2005 deposition of Mary Casey and the compilation of DSS's Motion; or, in the alternative, (3) an order compelling Ms. Casey to answer all questions relating to the selection of the name "Diamond Staffing, Inc." for the new company in 2003 (including all communications with DSI) and compelling Ms. Casey and/or DSI to pay its expenses relating to this matter.

DSI contends that it retains the right to assert the attorney-client privilege as to the issue of direct communications involving legal advice between Ms. Casey and DSI because it is *not* asserting an advice-of-counsel defense. DSI argues that, because it has not yet answered the complaint, it has not asserted any defenses in this matter, including, most importantly, the advice-of-counsel defense. Rather, DSI argues, it was DSS who raised the advice-of-counsel defense, using it as a sword to force DSI to waive the attorney-client privilege and to deny DSI the choice of whether to raise the defense or not.

There is no question that DSI's intent in adopting its corporate name is relevant to DSS's likelihood of success of establishing trademark infringement. *See, e.g., Boustany v. Boston Dental Group, Inc.*, 42 F. Supp. 2d 100, 108 (D. Mass. 1999) (listing the eight factors a court must consider to determine whether there is a likelihood of confusion of two marks). But DSS did not place Ms. Casey's advice at issue in the case merely by alleging that DSI selected its name in bad faith—even though Ms. Casey's advice might have been the reason why the intent was not

5

present.  If DSI simply denied the allegation of bad-faith intent, Ms. Casey's advice would not have been placed at issue.  But DSI went further and affirmatively offered—through, among other things, the affidavits submitted in support of its dispositive motion—proof of DSI's reliance on Ms. Casey's advice to rebut DSS's allegation of bad-faith intent.  Therefore, it was DSI who placed reliance on the advice of counsel at issue, and DSI must be deemed to have waived the privilege for communications between Ms. Casey and her client relating to the claimed reliance. *See generally* Paul R. Rice, *Attorney-Client Privilege in the United States*, § 9:44 (2d ed. 2005) (collecting cases).

DSI cannot at the same time cloak itself in consultation with counsel as evidence of its good faith, yet prevent DSS from discovering the contents of the communications.  *See In re Keeper of the Records*, 348 F.3d 16, 24 (1st Cir. 2003).  Regardless of whether DSI has asserted the advice of counsel as an affirmative defense under Fed. R. Civ. P. 8(c), a fair reading of its submissions to the Court thus far establishes that DSI has indicated that it intends to rely on advice of counsel.[3]

Nevertheless, waiver of attorney-client privilege is not something to be taken lightly. "Clearly, the party claiming the advice of counsel has a tough choice:  claim the defense or claim the attorney-client privilege." *Mushroom Assocs. v. Monterrey Mushrooms, Inc.*, No. C-91-1092 THE (PJH), 1992 WL 442892, *3 (N.D. Cal. May 19, 1992).  Accordingly, the Court will permit

---

[3] The cases the Court has reviewed suggest that formal pleading of the advice-of-counsel defense is not required for a defendant to be deemed to have waived the privilege.  *See Nitinol Med. Techs., Inc.*, 135 F. Supp. 2d 212, 213 (D. Mass. 2000) (producing opinion letters); *Saint-Gobain/Norton Indus. Ceramics Corp. v. General Elec. Co.*, 884 F. Supp. 31, 33 (D. Mass. 1995) (same); *Dorr-Oliver Inc. v. Fluid-Quip, Inc.*, 834 F. Supp. 1008, 1011 (N.D. Ill. 1993) (arguing good faith in motion for summary judgment); *cf. In re Keeper of the Records*, 348 F.3d at 24 (holding that an implied waiver involving an entire subject matter must involve some judicial disclosure).

DSI to decide whether it intends to rely on the advice of counsel in support of its position with respect to its intent in adopting the "Diamond Staffing" name.  Therefore, it is ORDERED that unless defendant Diamond Staffing, Inc. serves and files within five days of the date of this order written notice that it intends to withdraw reliance on the advice of counsel in connection with the issue of its intent in adopting the "Diamond Staffing" name, it must comply with DSS's discovery requests to the extent of the waiver.[4]  If DSI does provide such written notice, it shall be precluded from introducing any evidence or relying in any way on the advice of counsel in support of its position with respect to its intent in adopting the "Diamond Staffing" name, and any statements in affidavits or pleadings to the contrary shall be deemed withdrawn.

The Court at this time will not infer that DSI's conduct in asserting the privilege over Ms. Casey's direct communications with her client intentionally violated the Court's order or that it otherwise justifies the remedies provided in Fed. R. Civ. P. 37(b)(2).  Therefore the specific relief requested by DSS will be DENIED.

### III.   Conclusion

For the reasons stated above, plaintiff's motion for sanctions or to compel is GRANTED IN PART and DENIED IN PART, and defendant's motion for a protective order is DENIED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: July 8, 2005

---

[4] Because the Court understands the parties' dispute to concern the existence of the waiver rather than its scope, the Court need not address whether DSI has waived the privilege with respect to the subject matter of the specific questions placed to Ms. Casey in her deposition.