IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF MASSACHUSETTS

DIAMOND STAFFING SOLUTIONS INC )
)
    Plaintiff )
)
v. )      CIVIL ACTION NO:05-40046-FDS
)
DIAMOND STAFFING, INC )
)
    Defendant )

---

DEFENDANT, DIAMOND STAFFING, INC.'S PETITION FOR
LEAVE TO SUBMIT A LEGAL BRIEF IN EXCESS OF 20 PAGES, ASSENTED TO BY
PLAINTIFF

Now comes Diamond Staffing, Inc. and requests leave of court to file a memorandum of law

in excess of 20 pages in response to Plaintiff's Motion for Preliminary Injunction. As grounds for

this request, Diamond Staffing states as follows:

1.   This lawsuit involves allegations of infringement of protected trademark rights.

2.   The Court granted the parties the right to conduct discovery prior to the filing of the

    Plaintiff's Motion for Preliminary Injunction.

3.   Discovery has resulted in the production of voluminous documents and hundreds of

    pages of deposition testimony.

4.   The Plaintiff in this case has filed a Motion for Preliminary Injunction which runs to 28

    pages.

5.   The law pertaining to trademark infringement is complex, requiring detailed descriptions

    of elements and holdings, as well as application of that law to the facts. Thus, fact

    sections and legal sections tend to require expansive explanation that does not fit neatly

    within the twenty page limitation.

6. The Plaintiff, by its counsel, has assented to this motion following a conference as

required by Local Rule 7.1(A)(2)

WHEREFORE, the Defendant respectfully requests leave from the 20 page restriction to file

a Memorandum of Law not in excess of 30 pages.

Respectfully Submitted,

**Diamond Staffing, Inc.**
By its attorney,

Robert N. Meltzer, BBO #564745
P.O. Box 1459
Framingham, MA 01701
Phone: (508) 872-7116

Dated: July 14, 2005

2

CERTIFICATE OF SERVICE

I, Robert N. Meltzer, do hereby certify that on this day I served a copy of the foregoing by first class mail, postage prepaid, and fax, to:

Nixon Peabody LLP
100 Summer Street
Boston, MA 02110
Attn: Nicholas G. Papastavros, Esq.

Robert N. Meltzer

July 14, 2005

## CERTIFICATE OF COMPLIANCE WITH L.R.7.1(A)(2)

Pursuant to Local Rule 7.1(A)(2), Defendant's counsel certifies that he has met and conferred with Plaintiff's counsel pertaining to this motion by telephone, and that Plaintiff's counsel has assented to this motion

Respectfully Submitted,
**Diamond Staffing, Inc.**
By its attorney,

Robert N. Meltzer, BBO #564745
P.O. Box 1459
Framingham, MA 01701
Phone: (508) 872-7116

Dated: July 14, 2005

4

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIAMOND STAFFING SOLUTIONS INC ) | |
| ) | |
|     Plaintiff ) | |
| ) | |
| v. ) | CIVIL ACTION NO:05-40046-FDS |
| ) | |
| DIAMOND STAFFING, INC ) | |
| ) | |
|     Defendant ) | |

MEMORANDUM OF LAW IN SUPPORT OF THE DEFENDANT'S OPPOSITION TO
THE PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Now comes the Defendant, Diamond Staffing, Inc. ("Diamond" or "the Defendant") and

opposes the Plaintiff's Motion for Preliminary Injunction. This lawsuit is based entirely on two

fallacies repeatedly stated by the Plaintiff—first that the Plaintiff is the senior user of the

"Diamond Staffing" mark prior to the state and federal registration of the mark by the Defendant,

even though there is absolutely no evidence that the Plaintiff used the "Diamond Staffing" mark

prior to the Defendant's registration as would qualify it for trademark rights. The second fallacy

is that there is evidence of actual confusion between the two companies based upon the common

use of the words "diamond" and "staffing," although the Plaintiff has been unable to identify a

single instance of legally recognizable actual confusion. The Defendant states that this motion

should be denied upon the grounds that:

1. The Plaintiff cannot demonstrate a likelihood of success on the merits, and cannot even

    make a threshold showing of the ownership of protected trademark rights subject to

    infringement, or that the Plaintiff made such use of the Diamond Staffing mark prior to

    the registration of that mark by the Defendant as would qualify it for trademark

    protection;

2.  The Plaintiff has made absolutely no showing of irreparable harm, or any harm at all, while enjoining the use of the Diamond Staffing name by the Defendant would be extremely expensive and would cause irreparable harm grossly disproportionate to the harm claimed by the Plaintiff;

3.  The Defendant has incurred substantial costs developing its trademark rights during a time that the Plaintiff was fully aware of the Defendant's claim to the Diamond Staffing mark, such that the defense of estoppel by laches tilts the balances of harm in the favor of the Defendant

4.  The Plaintiff has not shown that the preliminary injunction will not negatively affect the public interest, as the Plaintiff is seeking to deny the Defendant (which provides nearly 1600 people a week with a paycheck) of its name without any evidence of infringement of any kind or nature, let alone the imminent and immediate harm required for a preliminary injunction.

In furtherance of this motion, Diamond states as follows:

I.      NATURE AND STATUS OF PROCEEDINGS

The Plaintiff filed this lawsuit under the Lanham Trade-Mark Act, §43(a), 15 U.S.C.A. §1125(a), alleging violation of the Plaintiff's trademark rights, as well as under M.G.L. c 93A, alleging unfair and deceptive trade practices under Massachusetts law. The Plaintiff moved for expedited discovery prior to filing this motion for preliminary injunction. Diamond filed a timely motion to dismiss, noting that the Plaintiff had failed to identify any protected trademark rights, and that the lawsuit was fundamentally frivolous. The Plaintiff has now moved for preliminary injunction. The Defendant opposes the motion on the grounds that the Plaintiff, which lacks any basis in fact or law, cannot make the requisite showing of likelihood of success on the merits.

2

## II.    RELEVANT FACTS

The Plaintiff, Diamond Staffing Solutions, Inc. incorporated its business in May of 2002 in Delaware, but has not registered as a foreign corporation in its alleged home state of New Hampshire (Affidavit of Giovanna Tancredi).  Plaintiff failed to register a state or federal mark to protect its use, if any, of the Diamond Staffing mark during the 18 months following incorporation. In January 2004, Plaintiff filed as a domestic New Hampshire corporation under the name "Diamond Staffing, Inc." (using the exact same name as the Defendant), but is currently not in good standing as it has made none of the requisite filings and reports to the Office of the Secretary of State (Affidavit of Anita Harmon).  The Defendant incorporated in Massachusetts in September of 2003, under the name Diamond Staffing, Inc. and promptly sought state and federal protection of the Diamond Staffing mark.

For the purposes of this motion, the Defendant refers to the period of time from May of 2002 until November of 2003 (the date of Defendant's registration of its mark), as "the Common Law Period," during which time the Plaintiff claims, erroneously, to have established trademark rights by common law usage.

The Plaintiff claims that it is a Delaware corporation conducting its business in the state of New Hampshire. (Plaintiff's Complaint, ¶ 3) and that it is a "fast-growing business…(providing) staffing services to approximately tens of renowned customers under the Diamond Staffing mark…" (Plaintiff's Complaint, p.1).  Plaintiff's Motion for Preliminary Injunction states that Plaintiff "*meticulously built its brand and reputation…*" (emphasis added) in the Common Law Period. The Plaintiff is actually a home-based business with apparently fewer than three employees,[1] located on a residential cul de sac in East Derry, New Hampshire. (DeVries Dep. 6-24). The business has no sign on it identifying the location of the business (DeVries Dep. 40-24).

---

[1] Based upon the laws regulating home-based businesses in Derry, New Hampshire

To date, Plaintiff has never had a telephone or fax listing under the name of Diamond Staffing Solutions, no yellow pages listing for Diamond Staffing Solutions, and no business locations other than the aforesaid home office. The Plaintiff placed a total of 9 candidates in 2002 to three different customers (DeVries Dep. 110 at 17-20 and Deposition Exhibit 20) and 15 candidates through September 2003 to five customers. Sixteen of the total 24 candidates placed during that period were to the same customer, Helzberg. Only one candidate was placed in Massachusetts during that period.[2]

Plaintiff alleges (Plaintiff's Complaint, page 3, section 12) that "Between May 2002 and November 2003 [the Common Law Period], Plaintiff built substantial goodwill and name recognition for Diamond Staffing in the jewelry industry through news articles, stories and profiles published throughout the U.S." and goes on to state further, "Examples of the goodwill established by Plaintiff *prior to the Defendant's first use of Diamond Staffing in November 2003* are attached hereto at Exhibit A." (emphasis added). This is false. In fact, with the exception of an agenda used at 2 recruiting events hosted by Day Jewelers in a New Hampshire location (which does not constitute promotional material), the evidence presented by Plaintiff in Exhibit A consists of 3 articles for the period between August 2004 through February 2005, well after Defendant entered the market and well *after* the Common Law Period. Plaintiff further infers in its Complaint (p. 4 section 13) and in the present Motion (p. 4) that, during the Common Law Period, it built up secondary meaning for its mark through advertisements in national print media and by being the subject of many testimonials as evidenced by Exhibit B. Again, Plaintiff offers no proof. Exhibit B contains no print advertisements, but merely a few press releases prepared by or for the Plaintiff during 2004 (again, *after* the Common Law Period) with no evidence whatsoever, that even one of these press releases ever was picked up by a magazine or appeared

---

[2] Plaintiff has given conflicting statements as to whether her recruiting efforts for two more candidates were actually placed in Massachusetts in October and December of 2003.

in any media. There is no evidence of any media coverage for the Plaintiff during the Common Law Period. It thus appears that starting in 2004, well after the Common Law Period, Ms. DeVries embarked on a campaign to try and establish an industry presence and garner attention for herself and her company in an attempt to build up some degree of secondary meaning for what was essentially a descriptive mark that was not well-known in the jewelry or any other industry. In fact, her total advertising expenditures in Monster.com, one of her most important advertising venues, has been $17,000 from 2002 to date (Affidavit of Kathleen Gilroy), and no figure has been given by Plaintiff for total advertisement expenditures made for national magazine placements.

The Plaintiff's business, as attested to by its own web site and other promotional materials (Bates 000253 and DSS 000259), is limited to permanent placement in the jewelry industry. Such advertising as may have been done for its business, as demonstrated by the Plaintiff's Complaint and other filings, is limited exclusively to specialized jewelry industry periodicals and targeted to jewelry store owners. (Plaintiff's Complaint, ¶ 4 and DSS 000383 and DSS 000393). Despite its stated exclusivity to the jewelry industry and the fact that the Plaintiff has never made a placement outside the jewelry industry, Plaintiff's later filing with the PTO on November 20, 2003 (after Defendant's filing) claims the broader, all-encompassing "professional staffing services" which violates PTO requirements that the listing of services not be any broader than the mark's actual usage. The Plaintiff clearly sees herself as being exclusively in the jewelry business and does not consider herself to be in the personnel staffing industry as demonstrated by her own testimony (DeVries Dep. 68). Ms. DeVries does not participate in the personnel placement industry and is not even familiar with names of industry magazines (DeVries Dep. 68). Recently the Plaintiff has tried to characterize itself as not operating only in the jewelry

business exclusively, but that it also services the giftware industry, yet admits that to date it has made no placement in that industry. (DeVries Dep.204 at 1-3).

At no time during the Common Law Period did the Plaintiff have an office in Massachusetts (DeVries Dep. 41-7). The Plaintiff had no telephone number or local address in Massachusetts. (DeVries Dep. 40-14). During the common law period, the Plaintiff had no employees in Massachusetts, and had no vehicles registered in Massachusetts (DeVries Dep. 65-20). During the Common Law Period, the Plaintiff advertised in no Massachusetts newspapers, carried on no ads on Massachusetts radio stations and did not direct television advertising into the Commonwealth of Massachusetts. (DeVries Dep. 57 at 8-24) During the Common Law Period, the Plaintiff did not advertise in any general circulation magazines, advertising only in specialty jewelry magazines (DeVries Dep. 49 at 5-13). The Plaintiff had no bank accounts in Massachusetts during the Common Law Period. (DeVries Dep. 55 at 20-21).

During discovery, the Plaintiff disclosed that in its capacity as a placement service for jewelry professionals, she only placed one candidate in Massachusetts, in May, 2002 at Whitehall Jewelers, although the actual customer was a Chicago-based company called Whitehall Corporation. (DeVries Dep. 91 at 10-19). The lead that resulted in this one placement came from a contact at Whitehall that she had developed during her employment at Management Recruiters (DeVries Dep. 80 at 8-16), and not as a result of any promotional activity or name recognition of Diamond Staffing Solutions in Massachusetts or elsewhere. Other than placing one candidate in Massachusetts in 2002, for which the Plaintiff received compensation of $4,000 from Chicago (DeVries Dep. 96 at 9-13), Plaintiff's "significant business" in the Commonwealth of Massachusetts during the Common Law Period consisted mostly of making cold calls in an attempt to find candidates for a couple of other positions she was trying to fill.

6

Prior to adopting her mark, Plaintiff did not, by her own admission, make an exhaustive or even

careful search of the name. She did not check its availability with the PTO register, limiting

herself to a simple internet search (DeVries Dep. 36 at 11-13). Moreover, Plaintiff admits

knowing that there was at least one other company using the mark "Diamond" in conjunction

with "Staffing", i.e. Diamond Dental Staffing (DeVries Dep. 37-15). Despite that knowledge,

Plaintiff arrived at the conclusion that because the names were not identical (DeVries Dep.

3823 to39-3) and the market segment served was different, she could adopt the mark (DeVries

Dep. 37 at 1-2). After adopting her mark, she did virtually nothing to protect it. She did not

register the business as a foreign corporation in her home state of New Hampshire, she did not

apply for trademark protection in any state, and she did not file for federal trademark

protection. In fact, she did not even get a phone listing in the Company's name, and often used

her personal name rather than the mark to promote her business. The Plaintiff produced

telephone records from the Common Law Period which indicated that the Plaintiff's telephone

number was invoiced under the name "Suzanne DeVries," not Diamond Staffing Solutions, Inc.

(Bates Stamp DSS 000575 – DSS 000762) On the day of Suzanne DeVries' deposition,

Diamond Staffing Solutions, Inc. faxed correspondence to the offices of Diamond Staffing,

Inc.'s attorney. Even in June of 2005, the fax signature reads "Suzanne DeVries," not Diamond

Staffing Solutions, Inc. (Deposition Exhibit 24) Testimonials on the web page for Diamond

Staffing Solutions, Inc. and a letter of recommendation does not reference Diamond Staffing

Solutions, Inc. as the source of a product, but rather Suzanne DeVries. (Bates Stamp DSS

000362 and DSS 000247). When discussing the expertise held by Diamond Staffing Solutions,

Inc., marketing literature references 35 years of experience, which is the experience of Suzanne

DeVries since she commenced work (part-time) at age 14.[1] (DeVries Dep. 22-23; Bates Stamp

---

[1] In the 3 year period since 2002, Plaintiff's has made conflicting claims in her own promotional materials that she

DSS 000002). It is also worth noting that the 35 years experience includes periods of time taken off for child raising and periods of time that the Ms. DeVries worked as an exercise instructor (DeVries Dep.18-2 through 22-18).

Suzanne DeVries testified that during the Common Law Period, any use of the Diamond Staffing name was used exclusively in conjunction with the word "Solutions."

Documents from Diamond Staffing Solutions, Inc. show that during the Common Law Period, Suzanne DeVries used e-mail addresses other than Diamond Staffing, specifically diamondsuz26@hotmail.com (Bates Stamps DSS 000103; DSS 000273), diamondsolutions@hotmail.com (Bates Stamps DSS 000103; DSS000325; DSS 000376). Evidence indicates that Diamond Staffing Solutions, Inc. did not begin using the Diamond Staffing name for e-mail traffic until October of 2003 (See, Bates Stamp DSS 000568), when she sent a memo instructing individuals to use the "Diamond Staffing" e-mail address. Contrary to Plaintiff's claims of having achieved a strong reputation and recognition as a result of her internet presence, in October 2003, even Suzanne DeVries, herself, couldn't locate the her own web-page from search engines. (Bates Stamp DSS 000569 and DSS 000570).

Defendant on the other hand, commenced its search for a name by engaging in an exhaustive search to determine availability and registrability of the names under consideration. Each name was checked against the PTO database, the Massachusetts corporate and trademark registry, state and national telephone directories and an Internet search. Defendant did not find any use of the mark "Diamond Staffing" that it deemed would render its adoption an infringement of established trademark rights. Plaintiff's mark did not show up on most search engines used, including, Google (DSS 000569 and DSS 000570). A telephone listing was not found for this company, nor was it registered in either the Massachusetts or New Hampshire Secretary of

---

has 25, 30 or 35 years experience in the jewelry industry.

State's database. To this date, a Google search on the telephone number the Plaintiff uses for her business indicates that the number is listed to Suzanne De Vries (Affidavit of Giovanna Tancredi). Defendant determined that because of the insignificant nature of the information found, the lack of corporate or trademark registration in the Defendant's territory, the Plaintiff's exclusivity to the jewelry industry, and its obvious lack of commercial presence in the area, there was no issue of established trademark rights and no issue of trademark infringement. Diamond Staffing, Inc. was chosen because the (1) Defendant and its employees simply liked the name, (2) it was an arbitrary name that was merely suggestive of the quality of its services but not descriptive of the market it planned to serve, and (3) because there was no evidence that anyone else had established any trademark rights in the name either by common law or through registration. There was no intent or possibility of capitalizing from someone else's prior use. Throughout this case Plaintiff has tried to convince the Court that there is an overlap of customer base that has led to actual confusion resulting in lost business for the Plaintiff (Plaintiff's Complaint, p. 2 and DeVries Dep. 202 at 17-20). During the pendency of this litigation, both the Plaintiff and Defendant provided customer lists. At the deposition of Suzanne DeVries, she could not identify a common customer between the two lists, or a customer that had been marketed to on the Defendant's customer lists.[4] (DeVries Dep. 185 at 9-17)

The Plaintiff accuses Defendant of bad faith in its adoption of the Diamond Staffing mark (Plaintiff's Motion, page 2) and that it adopted the Diamond Staffing mark with "the intent of creating confusion with Plaintiff and to capture goodwill generated by Plaintiff in the Temporary and permanent personnel placement industry." (Plaintiff's Complaint, page 6, item24). Plaintiff further stated in its Complaint that the parties had "overlapping customer base" and that the

---

[4] DeVries testified she might, someday, want to market to Costco, an existing Diamond Staffing, Inc., customer. (183), although Costco is not a current customer of the Plaintiff, does not fit the "elite jewelry merchandiser" characterization of Plaintiff's clients ,and the Plaintiff would not provide warehouse workers to Costco as the Defendant does.

Defendant is providing staffing services to the companies in the jewelry industry. (Plaintiff's Complaint, page 2, ¶1 and item 6). During her deposition, Suzanne DeVries could not identify a single lost customer as a result of the use of the Diamond Staffing name by Diamond Staffing, Inc. (DeVries Dep. 202 at 17-20). Discovery has shown, unequivocally, that there is no overlapping customer base (DeVries Dep. 185) and that Defendant has not and does not intend to provide staffing services to the jewelry industry. (Vaccaro Dep. 23 at 17-21). DeVries' only basis cited for the notion of bad faith is regarding the commonality of web page clip-art and a phrase which was in common use by many other web sites. (DeVries Dep. 165-172).

During her deposition Ms. DeVries showed a flagrant disregard for the accuracy of actual facts and dates. She insisted numerous times that she became aware of, and started to receive, misdirected email at the end of October when, in fact, documents she provided in discovery showed the first instance occurred on November 10, 2003, (Bates Stamp DSS 000127) at approximately the same time Defendant's email account went live. She claimed the first contact made was with Defendant's Attorney in late October when, in fact, it was directly with the Defendant by letter dated December 5, 2003. She claims that her mark had achieved tremendous name recognition at the time Defendant entered the market, when in fact, her own documents indicate that she, herself, had a hard time finding her website on various search engines (Bates Stamp DSS 000569 and DSS 000570). She makes exaggerated claims about industry awareness of her mark and market coverage to boost her claim of common law trademark rights that discovery has not substantiated. She has even given conflicting information on the number of years experience she has in the jewelry industry, magically going from 25 years when she first set up her website in 2002 (DSS 000323) to 35 years in an article written by her only three years later in 2005 for Professional Jeweler (Plaintiff's Complaint, Exhibit A).

10

Diamond is a Massachusetts corporation, approximately three years old, engaged in the placement of temporary personnel. (Affidavit of Francis Vaccaro, ¶ 4, Affidavit of Mary Casey to Support Motion to Dismiss¶ 3) Diamond maintains a weekly payroll of approximately 1400-1600 people. (Affidavit of Francis Vaccaro to Support Motion to Dismiss¶ 4, and exhibits). Diamond has ten offices, seven in Massachusetts and three in New Jersey. (Affidavit of Francis Vaccaro ¶ 3) Diamond does not provide permanent placement in the jewelry industry (Affidavit of Francis Vaccaro, ¶ 11). Diamond does not have an office in New Hampshire. (Affidavit of Francis Vaccaro, ¶ 12) Diamond produces annual sales of between $21,000,000 and $40,000,000 (Affidavit of Francis Vaccaro to Support Motion to Dismiss, ¶ 7).  Diamond spent in $163,000 to build its name and reputation in the Commonwealth of Massachusetts. (Affidavit of Francis Vaccaro)  As part of its goal to protect its mark, Diamond procured state trademark rights in the Commonwealth of Massachusetts on December 10, 2003 (Affidavit of Mary Casey ¶ 5), and filed for federal trademark rights with the Patent and Trademark Office on November 12, 2003 (Affidavit of Mary Casey to Support Motion to Dismiss ¶ 5). The Plaintiff made a filing subsequent to that date. (Records of the Patent and Trademark Office)  Frank Vaccaro, President of Diamond Staffing, Inc., testified in his deposition that Diamond Staffing, Inc. provided temp workers for agriculture (Vaccaro Dep. 53 at 13-18), call centers (Vaccaro Dep. 50-14), light industrial work (Vaccaro Dep. 24-4) and warehouse work (Vaccaro Dep. 58 at 5-6).DeVries testified that she does not provide workers in these sectors  (DeVries Dep. 181-18 and183-16). Vaccaro testified that Diamond Staffing, Inc. does not provide workers for the jewelry industry. (Vaccaro Dep. 23 at 17-21 and 124 at 11-24) The Defendant provided testimony that the Defendant advertises through newspaper advertising (Vaccaro Dep. 14-22 to 15-4)

In December 2003 Defendant informed Plaintiff that it disputed Plaintiff's claims of trademark infringement. (Bates Stamp DSS 000333) No action was filed after that letter was

sent, nor was there further communication other than concerning misdirected emails, and

Defendant spent $163,000, (Affidavit of Francis J. Vaccaro in support of Opposition) including

advertising, in developing its mark and growing its business after the December 23, 2003 letter

and before the suit was filed in 2005.

III.     ARGUMENT

A. THE STANDARD FOR A MOTION FOR PRELIMINARY INJUNCTION FAVORS
THE DEFENDANT, DIAMOND STAFFING, INC. SUCH THAT THE MOTION FOR
PRELIMINARY INJUNCTION MUST BE DENIED

In order "to obtain a preliminary injunction in a trademark case, a party must show that (1)

there is a substantial likelihood of its success on the merits. (2) without the injunction, there

exists a significant risk of irreparable harm, (3) the balance of hardships tilts in its favor and (4)

the granting of the injunction will not negatively affect the public interest." Bay State Savings

Bank v. Baystate Financial Services, LLC, 338 F. Supp.2d 181, 186 (D.Mass. 2004), citing TEC

Eng'g Corp. v. Budget Molders Supply, Inc., 82 F.3d 542,544 (1st Cir. 1996) The Court has

cautioned that "a preliminary injunction, though often sought in trademark cases, is still

extraordinary relief. It constitutes the exercise of a far-reaching power which ought not to be

indulged in lightly." Q Division Records, LLC v Q Records et al, 2000 U.S.Dist. Lexis 1773

(D.Mass 2000) citing Schwinn Bicycle Co. v. Ross Bicycles, Inc., 870 F.2d. 1176,1181 (7th Cir.

1989). The Court has determined that "[t]o make out a claim under §1125 of the Lanham Act,

the plaintiff must prove the following things: "(1) the ownership of a distinctive mark entitled to

trademark protection; (2)the use of that name in interstate commerce; and(3)its use by another in

a manner likely to cause confusion as to the origin of the goods or services." Boustany v. Boston

Dental Group, Inc. 42 F.Supp.2d 100,104 (1999), citing Calamari Fisheries, Inc. v. Village

Catch, Inc. 698 F.Supp. 994,1006 (D. Mass. 1988) Notwithstanding all three factors, the Court

has also concluded that "reduced to the essentials, the central inquiry...is whether...the use of the plaintiff's mark is likely to cause consumer confusion." Boustany, 42 F.Supp. 2d at 104.

The court must also consider "the most important element of any Lanham Act claim--likelihood of consumer confusion....To determine whether there is a likelihood of consumer confusion of two marks, the court must consider the following factors: (1) the similarity of the marks; (2) the similarity of the goods; (3) the relationship between the parties channels of trade; (4) the relationship between the parties advertising; (5) the class of prospective purchasers; (6)evidence of actual confusion; (7)the defendants' intent in adopting its mark; and (8)the strength of the plaintiff's mark." Boustany, 42 F.Supp 2d at 108, citing Pignons S.A. de Mecanique de Precision v. Polaroid Corporation 657 F.Supp 482, 487 (1st Cir. 1981).

In the case at bar, the Plaintiff does not have a protected trademark right that is senior to the Defendant's use. The Plaintiff cannot demonstrate that it had a mark subject to trademark or that it used the mark in commerce in the geographical region of Diamond Staffing, Inc. prior to the Defendant's registration of the mark. The Plaintiff cannot show that it operates in the same business channel, that it employs common marketing channels or that a single customer has ever experienced actual confusion between the two companies. In fact, it appears that the Plaintiff is a virtual company, working in an ethereal realm of the exclusive jewelry industry, into which neither the general public nor the marketing public would venture. Thus, likelihood of confusion is a near impossibility. Finally, there is no evidence of any irreparable harm warranting an injunction, while there is substantial evidence that the Defendant will be harmed if enjoined. Finally, because of the risk to the public if the injunction is issued, the motion must be DENIED.

1. **THE PLAINTIFF HAS MADE NO SHOWING OF USE OF A MARK SUBJECT TO TRADEMARK, OR THAT ANY MARK HAS EVER ACHIEVED SECONDARY MEANING.**

The Court has noted that "whether a mark is afforded trademark protection depends upon where the mark fits along a spectrum of categories that includes generic, descriptive, suggestive, arbitrary and fanciful marks…" Bay State Savings Bank, 338 F.Supp.2d at 187. The Court then notes that "a descriptive mark, which portrays a characteristic of the product to which it refers, is entitled to protection only if it has acquired 'secondary meaning' such that consumers associate the product with a particular source." Bay State Savings Bank, 338 F.Supp.2d at 187, citing Calamari Fisheries v. the Village Catch, Inc., 698 F.Supp. 994, 1006-7 (D.Mass.1988).

Here, the mark claimed by the Plaintiff is a descriptive mark, the Plaintiff, by admission, provides staffing solutions for diamond sellers.[5] Thus, the mark is only subject to protection if it meets the standard of "secondary meaning." Here, there is no evidence that the Plaintiff achieved this standard during the short seventeen month period prior to the registering of the Diamond Staffing mark by the Defendant. As noted, Suzanne DeVries created possible secondary meaning for *her* name, not the Diamond Staffing mark. As noted, the Plaintiff highlights Suzanne DeVries' experience, not the extensive work of Diamond Staffing Solutions, Inc. And, as noted, as of June of 2005, Diamond Staffing Solutions *continues* to use a fax signature of Suzanne DeVries, not Diamond Staffing. The Plaintiff merely argues, without more, that Diamond Staffing Solutions developed a secondary meaning from sparse use with a handful of customers over a very limited period of time. It simply defies credibility that any secondary meaning evolved.

---

[5] The Plaintiff makes the absurd statement in its motion that the Defendant's assertion that Diamond Staffing is a descriptive mark would also mean that it is a weak mark as to the Defendant, and thus not subject to trademark protection. Clearly, the name "Diamond Staffing" is not descriptive as to the Defendant, which is not in the business of providing staffing solutions to the diamond trade. This would be different if the Defendant had tried to trademark "Warehouse, Farm Workers and Call Center Staffing"

Because the Diamond Staffing mark is weak as to the Plaintiff, and because the mark clearly did not achieve any secondary meaning during the brief Common Law Period, the Plaintiff cannot make a threshold showing of a right to the mark, which precludes judgment at trial, and therefore precludes a preliminary injunction. Thus, the motion for preliminary injunction must be DENIED.

## 2. __THE PLAINTIFF CANNOT MAKE A SHOWING OF A SIMILAR MARK IN USE DURING THE COMMON LAW PERIOD, OR THAT SIMILAR GOODS RAISE A PRESUMPTION OF INFRINGEMENT__

The Plaintiff has failed to make a showing of similarity of mark, a necessary element in a Landham Act infringement case. It has long been noted that "similarity" means more than outward appearance of the mark and apparent similarity of the product group.

According to the law, "[w]ords may be recognized as similar because of sound, appearance, and meaning, and a finding of similarity may be based on appearance alone. Northern Lights Technology, Inc. v. Northern Lights Club, et al, 97 F.Supp.2d 96, 110(D. Mass. 2000), citing Volkswagenwerk Aktiengesellschaft v. Wheeler 814 F.2d 812,817 (1st Cir. 1987). As the Court further stated, "an evaluation of similarity does not end here. Similarity is determined on the basis of the designation's total effect and infringement doesn't exist, though the marks be identical and the goods very similar, when the evidence indicates no likelihood of confusion." Northern Lights Technology, Inc. 97 F.Supp.2d 96 at 110(D. Mass. 2000)

In Q Division Records, LLC v Q Records et al, the Court was confronted with two record companies both using the designation of "Q" and "Records." The Court was able to determine that, notwithstanding apparent similarity of names, and the fact that both companies made musical recordings, these similarities did not give rise to a claim for trademark infringement. The Court noted that "Q Division's artists create challenging works which are not intentionally geared for mass-market success. Recordings marketed under the Q RECORDS imprint, on the

other hand, apparently will cut a broader arc across various musical genre, ranging from opera to

honky-tonk to Broadway show tunes....An eclectic audiophile might have both Pavarotti and

Poundcake in her collection. And while it is certainly possible that an artist championed by Q

Division might someday achieve sales at the levels that Q Records aims for. But it seems plain

that while the broad category of goods-musical recordings-sold under the different marks is the

same, the goods themselves are dissimilar." Q Division Records, LLC v Q Records et al, 2000

U.S.Dist. Lexis 1773 at 14(D.Mass 2000.

The case at bar is quite similar to the Q Records matter. While both the Plaintiff and the

Defendant use the words "Diamond" and "Staffing" in their names, the distinctions are greater

than the similarities. With regard to the Plaintiff, the use of the word "solutions" apparently

marks the service that the Plaintiff is selling. The Plaintiff provides supposedly unique employee

to fit a particular retail "problem." The Plaintiff sells "solutions' and the Plaintiff highlights this

factor. Indeed, Suzanne DeVries testified that during the Common Law Period she did not use

"Diamond Staffing" in commerce other than in conjunction with "solutions."

The Defendant, on the other hand, provides "staffing," and lots of it. Whereas the

Plaintiff looks to fill a singular spot, the Defendant provides the service in volume. And since the

two companies do not engage in radio or television advertising, and the name is predominantly

viewed in writing, the names do not appear similar. Additionally, the product delivered is not

similar. While both are in the placement business, the Plaintiff markets herself as appealing to a

sophisticated market of customer, the crème de la crème of the jewelry industry. The Defendant

provides farm laborers and others in the personnel industry. Both provide services in the same

class, but the product actually delivered to the customer is dramatically different in

sophistication. Consequently, the law makes clear that the mark and the product are not similar,

and the motion for preliminary injunction must be DENIED.

3. **THE PLAINTIFF CANNOT DEMONSTRATE MARKET PENETRATION IN THE DEFENDANT'S MARKET AREA, AND, BASED UPON THE NONAPPLICABILITY OF THE ZONE OF NATURAL EXPANSION ZONE IN THE FIRST CIRCUIT, CANNOT MAKE A SHOWING OF PENETRATION SUFFICIENT FOR THE CLAIM TO SURVIVE, SUCH THAT THE MOTION FOR PRELIMINARY INJUNCTION MUST BE DENIED**

There is absolutely no evidence that the Plaintiff was engaging in business in Massachusetts during the Common Law Period, let alone that the Plaintiff was using the mark in the Commonwealth of Massachusetts. The law is clear—in order to establish the use of a mark in a geographic area, the party attempting to establish the mark must be engaged in overtly public business activity and, only then, in the area in which actual business is conducted.

In Raxton Corporation v. Anania Associates, Inc., 635 F.2d 924, 930 (1st Cir. 1980), the Court made the definitive statement that a party may only seek to enjoin possible infringers on a mark in the exact geographical area in which the party is physically conducting business, and that the doctrine of "zone of natural business expansion" is invalid in the First Circuit, noting

> if a 'natural expansion' doctrine independent of a concern with the good faith of the subsequent user or the prior reputation of the mark in the contested territory ever had any place in federal law, we believe that this place could have existed only before federal statutes provided a procedure by which trademark owners could register their marks in an effort to gain preemptive protection beyond their area of actual trade. But the Lanham Act, which created the statutory tort at issue in this suit, also provides a comprehensive registration procedure establishing preemptive rights to the extent that Congress thought desirable….The trademark owner who ignores this statutory mechanism…cannot be heard to complain about is failure to preempt subsequent good faith users.

The Court noted that the use of the mark, in order to serve as a claim of use, must be comprehensive, rising above a "scintilla" of evidence of use, noting specifically that Raxton "did not pursue federal registration nor the presumably more expeditiously obtained Massachusetts registration. It did not even utilize its headquarters and warehouse space to publicize the name by signs or other means…" and thus "…had established no prior use of or reputation for the name in Massachusetts."

17

The factors suggested by the Court which did not rise above a "scintilla" are telling. The Court notes that Raxton *incorporated* in Massachusetts in 1978 and *leased* warehouse space in Massachusetts in the same year. The Court noted that although Raxton "had made private sales to employees from its Norwood warehouse, it did not sell to the public or advertise in Massachusetts until it opened a store near its Norwood warehouse..." Raxton Corporation v. Anania Associates, Inc., 635 F.2d at 926. In short, business activity geared toward eventual sales does not constitute use in the Commonwealth of Massachusetts. Even having a local address and engaging in start-up activity does not rise to the level of "use" necessary to establish trademark rights. (See, also, Thrifty Rent-a-Car System, Inc. v. Thrift Cars, Inc., 639 F.Supp 750, 753 (D.Mass. 1986)("the test is whether the party's mark is sufficiently known there, or whether its sales there are of sufficient volume, to create a likelihood of confusion amongst consumers.... trademark rights cannot be established by advertising alone" "Sales must be significant enough to pose the real likelihood of confusion...." Thrifty Rent-a-Car System, Inc. v. Thrift Cars, Inc., 639 F.Supp at 754, citing Sweetarts v. Sunline, Inc., 380 F.2d. 923,929 (8th Cir. 1967))[6]

In the case at bar, the Plaintiff seems to be arguing "natural zone of expansion", claiming that placing one candidate in Massachusetts to an Illinois client somehow awards the Plaintiff the exclusive right to use the Diamond Staffing mark in the entire Commonwealth outside of the trademark registration process. [7] The Plaintiff's claim is far, far weaker than Raxton's claim. Raxton, at least, was a Massachusetts corporation with a place of business in the Commonwealth. Even so, and even with a handful of private sales, the Court found that Raxton had not established "use" in the Commonwealth for the purposes of trademark protection.

---

[6] In the Third Circuit, the Court has found that one sale, with no subsequent sale for four months, failed to constitute useage. Lucent Information Management, Inc. v. Lucent Technologies, Inc., 186 F.3d 311 (3rd Cir. 1999) Here,the Plaintiff made one sale in Massachusetts to an Illinois customer May of 2002, with no others sales until sixteen months later.

[7] The Plaintiff notes that it also made some telephone calls and had some business prospects in Massachusetts that did not result in sales other than the one sale in May of 2002. This does not give rise to recognized trademark rights by usage.

Here, the Plaintiff has absolutely no connection with Massachusetts—no address, no sign, no employees, no general advertising, no insurance, no bank account, no state registration with the Secretary of the Commonwealth and no registration of the mark. In addition, the Plaintiff can only point to one sale in the Commonwealth in 2002, in which the customer was an Illinois company that provided payment to the Plaintiff in New Hampshire. The Plaintiff then went dark for 18 months. The Plaintiff was invisible to the general public in Massachusetts during the Common Law Period, and invisible to the Defendant as well. The Plaintiff can make no showing that it conducted the kind of business in the Commonwealth consistent with use necessary to establish trademark rights, or that it penetrated the market. The fact that the Plaintiff may have intended to conduct business here is barred by rejection of the "natural zone of expansion" doctrine in the First Circuit. There is no evidence of use, no evidence of market penetration and no ability to rely on the expansion doctrine. Thus, the Plaintiff can make no showing of a likelihood of success on the merits, and the Motion for Preliminary Injunction must be DENIED.

4. **THE PLAINTIFF CANNOT DEMONSTRATE THE SAME CLASS OF PROSPECTIVE PURCHASERS, SUCH THAT THE MOTION FOR PRELIMINARY INJUNCTION MUST BE DENIED, NOR CAN THE PLAINTIFF CANNOT DEMONSTRATE THAT IT PROVIDES SIMILAR GOODS, OR THAT IT OPERATES WITHIN THE SAME MARKETING CHANNEL, SUCH THAT THE MOTION FOR PRELIMINARY INJUNCTION MUST BE DENIED**

The Court, in denying a motion for preliminary injunction in <u>Bay State Savings Bank v. Baystate Financial Services, LLC</u>, 338 F.Supp. 2d 181 (2004), made it clear that the a company seeking to enjoin the use of a similar name must show that the junior user must be in such exact synergy with regard to business and marketing channels that the risk of actual confusion is palpable and ongoing. The very-recent <u>Bay State</u> case is a critical case in Massachusetts, as it confirms the concept that two companies can exist side by side with almost identical names, and in almost identical geographic proximity, without demonstrating trademark infringement.

The <u>Bay State</u> case involved two financial institutions, both of which had physical presence in the city of Worcester. In denying Bay State Savings Bank's motion for a preliminary injunction, the court noted that Bay State Savings Bank had failed to demonstrate the prongs of actual confusion and common business, noting that Bay State Savings Bank was a consumer bank, while Baystate Financial Services was a financial services company. Both banks, while carrying a common name, a common geographic location and a common general industry (banking), were not involved in the same line of business. Thus, even though some potential for confusion existed, the difference in business type would preclude any harm from transpiring. <u>Bay State</u> stands for the principal that in order to prevail on a claim under the Lanham Act in Massachusetts, the party seeking relief must demonstrate that the business entities are providing services that are so identical such there is a certainty of harm arising out of actual confusion.

In <u>Boustany v. Boston Dental Group, Inc.</u> 42 F.Supp.2d 100,104 (1999), in granting injunctive relief, the Court noted that a dental patient could be in the wrong dental chair before the mistake was discovered, since both companies delivered to the same service. Absent the kind of confusion shown in <u>Boustany</u> leading to a true loss of business, the claim must fail.

It is absolutely crucial in proving a claim under the Lanham Act that the marketing channel and business type be so identical as to create the certainty of actual confusion that would give rise to harm. In fact, the <u>Boustany</u> and <u>Bay State</u> cases stand for the principle that the Plaintiff must show that the similarity is likely to lead to the actual transference of business from one entity to the other as a result of confusion. The case law states that the actual confusion must affect *real customers* who would be unable distinguish between the two corporate entities because of the common business channel. In short, the Plaintiff in the case at bar would have to show that as a result of confusion between the Plaintiff and the Diamond, the Plaintiff's customers would find themselves inadvertently sitting in Diamond's figurative dentist chair.

20

Here, the Plaintiff can make absolutely no such showing. In fact, it is factually impossible for the Plaintiff to make such a showing because the two businesses do not compete. Fundamentally, as with Bay State/ Baystate, the parties in the case at bar are involved in the same general industry, (Bay State and Baystate were both financial service companies; the Plaintiff and Diamond are both in personnel services). However, as with Bay State/Baystate State, the parties do not operate within the same channel of trade. (Bay State was a savings bank and Baystate was a financial services company) In the case at bar, the Plaintiff provides permanent staffing exclusively in the jewelry industry while Diamond provides temporary staffing outside of the jewelry industry. As with Bay State/Baystate, the Plaintiff and Diamond market to entirely different customers and advertise in entirely different media. The prospective customers are an entirely different class of people—the Plaintiff markets only to high-end jewelry stores. Diamond does not conduct business with jewelry stores, and deals with a comparatively less sophisticated class of business customers. In addition, the Bay State/Baystate case, as well as the Boston Dental/Boston Dental Group cases, involved immediate geographic proximity. Both Bay State and Baystate operated in Worcester and were within visual range of each other. Boston Dental operated in the market where many of its customers work, while Boston Dental Group operated where many of those same customers lived. In the case at bar, there is no geographic proximity. Indeed, there is no showing that during the Common Law Period the Plaintiff even used the mark in the Commonwealth.

Diamond Staffing, Inc. and Diamond Staffing Solutions, Inc. don't simply operate in different marketing channels and in different geographic areas. The evidence suggests that these two companies operate entirely in two entirely different universes, with no likelihood that their customers would cross paths. As with <u>Bay State</u>, the Plaintiff and the Defendant cannot and would not service each other's customers. Thus, just as Bay State was not entitled to a

preliminary injunction against Baystate, the Plaintiff cannot make a showing that it is entitled to injunctive relief against the Defendant, and the motion must be DENIED.

### 5.  THE PLAINTIFF CANNOT MAKE A SHOWING OF CONSUMER CONFUSION UNDER THE POLAROID FACTORS, SUCH THAT THE MOTION FOR PRELIMINARY INJUNCTION MUST BE DENIED

In order to make a case of trademark infringement, the Plaintiff must show actual confusion *by customers*. Astra Pharmaceutical Products, Inc. v. Beckman Instruments, Inc., 718 F.2d 1201,1206 (1st Cir. 1983)("If likelihood of confusion exists, it must be based on the confusion of some relevant person, i.e. a customer or purchaser.") The Supreme Court has recognized, even recently, that *some* confusion between companies with similar names does not give rise to an actionable claim for infringement The Court noted that "since the burden of proving likelihood of confusion rests with the plaintiff, and the fair use defendant has no free-standing need to show confusion unlikely , it follows…that some possibility of consumer confusion  must be compatible with fair use, and so it is.". KP Permanent Make-up, Inc. v. Lasting Impressions I, Inc., 125 S.Ct. 542,550 (2004)

The Plaintiff has been unable to identify *any* actual confusion by customers. The Plaintiff presents an Affidavit of  Mark L. Olsen at Kirchner Corporation. Olsen sent an e-mail to DeVries based upon a referral by another customer of Diamond Staffing Solutions, Inc.(Carla Corporation), yet he misdirected the e-mail to the Defendant.  However, as even he states in his affidavit, he knew that he wanted to speak with DeVries, and he had attempted to reach DeVries. He then states in his affidavit, paragraph 10 that "I reiterated to Ms. Moore that I was looking for Ms. DeVries, as she was the person that Carla Corporation recommended." This is not evidence of "actual confusion" in which the customer is confounded by two companies with the same name selling the same product. This is a case in which the customer knew who he wanted,

22

without being confounded. This emphatically does not constitute "actual confusion" under the law.

DeVries could only identify by name one other instance of customer "confusion." On page 201 of her deposition, Suzanne DeVries referenced a customer in Iowa, John Joseph of Joseph's Jewelers, who was allegedly "confused" by similarity in web pages between the Plaintiff and Defendant. In her testimony, DeVries testified that John Joseph said to her "I went to Diamond Staffing, Inc.'s website, looked through it fairly extensively, and finally decided that that was not your website, and then had to on a search for yours." Today, the Plaintiff is doing business with Joseph Jewelers. (Deposition of Suzanne DeVries, page 201). The Affidavit of John Joseph confirms these facts, even stating in paragraph 9 "Only after closely examining several different pages of the website did I come to the ultimate realization that I likely had the wrong company." Discovering this issue took "3-5 minutes," which the Plaintiff refers to as "languishing." The Court has specifically found that John Joseph's experience does not constitute "actual confusion." His experience is an entirely different legal animal called "initial confusion," "which is not cognizable under trademark law in the First Circuit." Northern Lights Technology, Inc. v. Northern Lights Club, et al, 97 F.Supp.2d 96, 113(D. Mass. 2000), citing Astra Pharm. Prods, Inc. v. Beckman Instruments, Inc., 718 F.2d at 1207. John Joseph recognized, quite quickly, that he was not looking at the right web page, and he was able to find the correct web page. He was not actually confused by the two, but merely initially confused.

The Plaintiff has also attempted to inflate the importance of the error in being improperly named as a party in a discrimination suit. The Plaintiff has even cited a case, CNA Financial Corporation v. CNA Insurance Companies, Inc., 922 F.Supp 567,573 (M.D. Fla. 1996) for the proposition that "[l]egal proceedings erroneously commenced against a trademark or service work holder constitute actionable confusion." (Memorandum, page 23). This is *not* the holding

23

of CNA Financial. CNA Financial found that the actual confusion arose because "CNAF presented evidence that several *consumers* were actually confused when they incorrectly served Brown's company with lawsuits intended for CNAF." CNA Financial Corporation v. CNA Insurance Companies, Inc., 922 F.Supp at 573.(emphasis added) Consistent with all other trademark law, the import of the erroneously filed lawsuits is that the suits were filed by *consumers*. This is the critical item pertaining to infringement. In the case at bar, it appears that *the lawyer* for a former employee was confused, not that there was confusion in the marketplace between the Plaintiff's or Defendant's *consumers or some other relevant person.*

The Plaintiff has also referred to "hundreds of misdirected e-mail" and an odd incident involving the Massachusetts Division of Transitional Assistance.[8]  However, the misdirected e-mails did not consist of communications with customers, but rather misdirected interoffice e-mail and junk e-mail involving irrelevant persons, much of which may not have been intended for either party to this case. Indeed, documentation provided by the Plaintiff demonstrates that misdirected e-mail was a short-term problem that was resolved more than a year prior to the filing of suit.

The Plaintiff has not alleged a single instance where a customer was confused by the two companies, anecdotally or otherwise, such that the Plaintiff cannot make a showing of likelihood of success on the merits, and the Motion for Preliminary Injunction must be DENIED.

---

[8] The Defendant has moved to strike the Affidavit of Lucy Darling, which consists entirely of hearsay statements regarding her conversation with the DTA. The Defendant is still trying to ascertain some possible relevance of this conversation, without any success.

**6. THE PLAINTIFF HAS MADE NO SHOWING THAT THE DEFENDANT WAS AWARE OF THE PLAINTIFF'S USE OF A "DIAMOND STAFFING" MARK PRIOR TO THE ADOPTION OF THAT MARK BY THE DEFENDANT, OR THAT IT HAD ANY UNLAWFUL INTENT IN ADOPTING THE DIAMOND STAFFING MARK IN 2003, SUCH THAT MOTION FOR PRELIMINARY INJUNCTION MOTION MUST BE DENIED**

The Defendant adopted the Diamond Staffing mark in October of 2003 for very simple and innocuous reasons—it liked the name, it was available for use according to the Secretary of the Commonwealth, the "Diamond Staffing" mark was not subject to any state or federal trademark protection and there was no evidence whatsoever that anyone else was using the mark in the Commonwealth in the same line of business. According to the law, the mark was available for use.

The Plaintiff has provided no evidence that the Defendant willfully infringed on its mark by adopting the Diamond Staffing mark. Indeed, it would be legally and factually impossible for the Defendant to have infringed on the mark, as the Plaintiff was not using the mark in the same geographic area and in the same channels of business and marketing. Indeed, all of the evidence suggests that the mark was not in use in the Commonwealth. At the deposition of Suzanne DeVries, she was asked an extensive string of questions to determine if the Plaintiff engaged in any form of business in Massachusetts that would have given notice of use of the mark.

DeVries testified that she placed one candidate in Massachusetts during the Common Law Period (in May of 2002), but that she placed no other candidates during the next seventeen months to a Chicago customer doing business in Massachusetts. Even in New Hampshire, the company was virtually invisible to the general public. The Plaintiff was just one of several companies using the name "diamond staffing" in the United States, along with Diamond Staffing Services, Diamond Dental Staffing, Diamond Medical Staffing, and others. Consistent with the

25

law, each of these companies are operating in different marketing channels in different geographic regions. Indeed, DeVries testified that she was aware of a company called Diamond Dental Staffing, but did not view her name selection as a problem because her company would operate within a different corner of the placement industry. This is a competent interpretation of a statement to this effect in <u>KP Permanent Make-up, Inc. v. Lasting Impressions I, Inc.</u>, 125 S.Ct. 542,550 (2004) that "if any confusion results, that is the risk the plaintiff accepted when it decided to identify its product with a mark that uses a well-known descriptive phrase." (citing <u>Cosmetically Sealed Industries, Inc. v. Chesebrough-Pond's USA Co.</u>, 125 F.3d 28,30 (C.A. 2 1997).

The Plaintiff appears to be intentionally blurring two entirely different concepts—knowledge of the Plaintiff's existence, and knowledge of the Plaintiff's claim of use of a mark subject to protection. The mere fact that the Defendant may have known of a Delaware company operating as a home business engaged in the jewelry trade in New Hampshire using the words "diamond" and "staffing" cannot be construed, as a matter of law, as meaning that the Defendant knew that the Plaintiff was claiming use (erroneously) of the "Diamond Staffing" mark in Massachusetts in the temporary employment market. The Plaintiff has failed to demonstrate the first prong of an infringement claim—use of a mark. The "diamond staffing" mark was simply not being used by the Plaintiff in the Commonwealth of Massachusetts. Period. Consequently, the Plaintiff cannot, and has not, been able to demonstrate any unlawful or bad faith adoption of the mark by the Defendant, such that the Motion for Preliminary Injunction must be DENIED

B. <u>THE PLAINTIFF HAS FAILED TO MAKE ANY SHOWING OF IRREPARABLE HARM, WHEREAS THE DEFENDANT WILL SEVERE SUSTAIN AND IRREPARABLE HARM IF THE PRELIMINARY INJUNCTION IS GRANTED, SUCH THAT THE MOTION FOR PRELIMINARY INJUNCTION MUST BE DENIED</u>

The Defendant is baffled by the notion that the Plaintiff has incurred any harm, let alone irreparable harm. Suzanne DeVries has admitted in her deposition that there is no overlap of customers, or types of customers, whatsoever. There is no evidence that the Plaintiff has sustained the loss of a customer based upon confusion. The Plaintiff has even failed to show any "actual confusion" The Plaintiff's entire claim of irreparable harm seems to be based upon the hearsay statement of a welfare agency worker. Indeed, it is unlikely that the incident described would have been heard by anyone whose opinion would matter had the Plaintiff not filed the affidavit. In effect, if any irreparable harm is occurring to the Plaintiff, the Plaintiff is doing it to itself in this lawsuit. This does not rise to the level of harm anticipated by the legislature for the dramatic remedy of injunctive relief. Consequently, in the absence of any evidence of irreparable harm, the Motion for Preliminary Injunction must be DENIED.

The Defendant, on the other hand, will suffer irreparable harm if it denied use of its name. As is noted in the testimony of Frank Vaccaro, the Defendant has grown from a start-up company in the fall of 2003 with eight employees has grown to a ten-office, multi-state, $35,000,000/year business enterprise with 1400/1600 employees on its weekly payroll and a customer list of more than 200 entities. Changing the name at this point will cost hundreds of thousands of dollars, if not millions of dollars. This will have a severe impact on the company and the reputation that it has built. In addition, the Defendant has applied for trademark protection and has taken all of the other steps required by law to protect itself.

Case 4:05-cv-40046-FDS    Document 55-2    Filed 07/15/2005    Page 28 of 30

Considering the facts it this case, and the frivolous nature of Plaintiff's claim, the risk of harm clearly weighs more heavily if injunctive relief is granted, than if it is not.

For this reason, it is imperative that the Motion for Preliminary Injunction be DENIED.

C.  <u>THE DEFENDANT CAN SHOW THAT THE PUBLIC INTEREST WILL BE HARMED BY THE ISSUANCE OF A PRELIMINARY INJUNCTION SUCH THAT THE MOTION FOR PRELIMININARY INJUNCTION MUST BE DENIED</u>

The Defendant has grown to an extensive, multi-state corporation with an expansive customer list and a growing pool of employees who depend on the continuing viability of Diamond Staffing, Inc. The public interest favors protecting these jobs and this company in the absence of some compelling reason to do otherwise. The Plaintiff has presented no evidence of infringement whatsoever that would justify interfering in the employment relationships of nearly 2000 people. Public interest favors denial of the motion.

In addition, the public interest favors certainty in the trademark law area. The evidence clearly shows that the Defendant did everything right in proceeding with the use of the mark "Diamond Staffing." The Defendant checked for availability with in-state sources. It checked for prior registration of the mark. It found no users in Massachusetts and proceeded to build a multi-million dollar company around that mark that provides substantial employment to may people. It now finds itself challenged by a home-based business that failed to do any of the things mandated by law to entitle it to trademark protection.  Instead, the Plaintiff asks this Court to overturn the bar on "natural zone of expansion" so that a well-hidden company in New Hampshire may later challenge a superior user and may smear that user with baseless innuendos and frivolous litigation.

The public interest requires that this Court protect the Defendant, as failure to do so will cause chaos and uncertainty in the marketplace.The public interest requires that the Motion for Preliminary Injunction be DENIED.

28

D. THE DEFENDANT HAS AN ABSOLUTE DEFENSE OF ESTOPPEL BY LACHES TO
   THIS LAWSUIT, WHICH WOULD BAR RECOVERY BY THE PLAINTIFF, THUS
   DEFEATING ANY LIKELIHOOD OF SUCCESS ON THE MERITS AND REQUIRING
   THAT THE MOTION FOR PRELIMINARY INJUNCTION BE DENIED

The doctrine of laches states that a party seeking equity who has sat on his or her rights may

be denied equity based upon justifiable reliance of the other party on the inactivity of the first

party. The Court has noted that irreparable harm should be paired with prompt action, stating that

"[d]elay...undercuts the sense of urgency that ordinarily accompanies a motion for preliminary

relief and suggests that there is, in fact, no irreparable injury..." Le Sportsac, Inc. v. Dockside

Research, Inc., 478 F.Supp. 602,609 (S.D. N.Y. 1979), citing Gianna Cereda Fabrics v. Bizaar

Fabrics, Inc., 335 F.Supp. 278 (S.D.N.Y. 1971). As the Court concluded, "for the purposes of

this motion, 'plaintiff's claimed need for immediate relief is undercut by the slow relief with which

plaintiff has sought to obtain it." Diamond is a substantial, interstate company paying nearly 1600

people weekly, and reaching sales in the tens of millions of dollars. The company has followed

all of the safe harbors for protection of its business interests, including the availability of its

name and the availability of its mark in both Massachusetts and under federal law. At the time

that the Plaintiff "discovered" that the Defendant was using the "Diamond Staffing" mark in

November of 2003, the Defendant was in early start-up mode and had about eight employees. In

December of 2003, the Defendant informed the Plaintiff, through counsel, in explicit and no

uncertain terms, that it would not change its name or cease the use of the Diamond Staffing

mark, which had already been registered for both state and federal trademark protection.

The Plaintiff did nothing in December of 2003 to protect any common law rights it may have

claimed. Based upon the apparent acquiescence, Diamond Staffing, Inc. grew the business to the

size it is today, and invested substantial sums in that development. The Plaintiff did nothing to

seek relief until this suit was filed in March of 2005, fifteen months later. This period of time

was simply too long. The lawsuit is untimely, and a remedy awarded to a Plaintiff who failed to

act, at the prejudice of the party who relied on acquiescence is unjust and inequitable. The Plaintiff, by claiming irreparable injury at this very late date, has totally undercut any credible claim to the need for drastic injunctive relief. Under the doctrine of laches, this motion, and the whole claim, is simply too late, and the Motion to be DENIED.

## IV. CONCLUSION

Because the Plaintiff cannot make even a fundamental showing a right to bring a claim under the Lanham Act by failing to show standing, and because the Plaintiff cannot make any conceivable showing of ownership of a mark, infringement of a mark, confusion with a mark or harm by Diamond, the Motion for Preliminary Injunction must be DENIED. Because the Plaintiff can make no showing of irreparable harm, and the balance of prejudice must weigh in favor of the Defendant, the Motion for Preliminary Injunction must be DENIED. Finally, because public interest weighs against allowance, and because the Plaintiff is estopped from seeking this relief under the doctrine of laches, the Motion for Preliminary Injunction must be DENIED.

Respectfully Submitted,
**Diamond Staffing, Inc.**
By its attorneys,

Robert N. Meltzer, BBO #564745
P.O. Box 1459
Framingham, MA 01701
Phone: (508) 872-7116

Mary O. Casey, BBO #636250
Harbor Law Group
48 Maple Avenue
Shrewsbury, MA 01545
Phone: (508) 842-9244

Dated: July 14, 2005

30