IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIAMOND STAFFING SOLUTIONS INC ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | CIVIL ACTION NO:05-40046-FDS |
| ) | |
| DIAMOND STAFFING, INC ) | |
| ) | |
| Defendant ) | |

MOTION OF COUNTERCLAIM PLAINTIFF, DIAMOND STAFFING, INC.
TO IMPLEAD DIAMOND STAFFING, INC. (NH) AND SUZANNE DEVRIES,
INDIVIDUALLY, AS COUNTERCLAIM DEFENDANTS PURSUANT TO F.R.C.P. 19(a)

Now comes the Plaintiff in Counterclaim, Diamond Staffing, Inc. ( hereinafter referred to as "Diamond Staffing") and moves to implead Suzanne DeVries, Individually, (hereinafter "DeVries") and Diamond Staffing, Inc. (hereinafter "DSNH") as direct Counterclaim Defendants, pursuant to F.R.C.P. 19(a). This lawsuit involves a federal question of trademark law. The proposed parties would not, in any way, deprive this Court of jurisdiction. Further, the motion is a motion for convenience and judicial efficiency, as Diamond Staffing, Inc. intends to file suit against these parties as a matter of course to protect its trademark rights and the value of its contractual relationship. Logic dictates that these parties be impleaded so that full adjudication of all claims may occur in one matter, which is the purpose of Rule 19. As further grounds for this motion, Diamond Staffing states as follows:

I.   NATURE AND STATUS OF PROCEEDINGS

The Underlying Plaintiff, Diamond Staffing Solutions ("DSS") filed this lawsuit under the Lanham Trade-Mark Act, §43(a), 15 U.S.C.A. §1125(a), alleging violation of the Plaintiff's trademark rights, as well as under M.G.L. c 93A, alleging unfair and deceptive trade practices under Massachusetts law. The Court has rejected DSS's motion for preliminary injunction.

Diamond Staffing has filed a counterclaim against DSS alleging both state and federal trademark violations of Diamond Staffing's trademark rights, as well as unfair and deceptive trade practices.

Diamond Staffing now moves to implead Suzanne DeVries, the principal of DSS, who is clearly the alter ego of DSS. The record in this matter already demonstrates that DSS is a sham corporation, and that it is merely a d/b/a of DeVries. Also, DeVries was the incorporator of ("DSNH") a New Hampshire corporation, created with full knowledge of Diamond Staffing's claim to the name, and with obvious and transparent intent to trade on Diamond Staffing's trademark and reputation, and to otherwise sow confusion, abscond with business opportunities and to otherwise interfere with Diamond Staffing's legitimate business operations in the state of New Hampshire.

II.     RELEVANT FACTS

The following facts were developed during the early discovery in this matter prior to the rejection of DSS's motion for preliminary injunction:

DSS is a home-based business with apparently fewer than three employees, located in Suzanne DeVries' home on a residential cul de sac in East Derry, New Hampshire. The business has no sign on it identifying the location of the business. To date, DSS has never had a telephone or fax listing under the name of Diamond Staffing Solutions, no yellow pages listing for Diamond Staffing Solutions, and no business locations other than the aforesaid home office. In her deposition, DeVries testified that the working space for DSS within her personal home has no separate entrance, and pays no rent for its space.

In January 2004, DSS filed as a domestic New Hampshire corporation under the name "Diamond Staffing, Inc." but is currently not in good standing as it has made none of the

requisite filings and reports to the Office of the Secretary of State. The corporate address of DSNH is also the home of Suzanne DeVries, as well as DSS.

It does not appear that DSS has any capitalization, or any assets separate from the assets of Suzanne DeVries. The record has also demonstrated a low revenue flow for DSS since its inception in 2002.

The evidence has shown that Suzanne DeVries customarily used her personal name, credentials and experience rather than the merits of DSS to promote her business. DSS produced telephone records which demonstrate that DSS's telephone number was invoiced under the name "Suzanne DeVries," not Diamond Staffing Solutions, Inc. As late as June of 2005, the fax signature for DSS reads "Suzanne DeVries," not Diamond Staffing Solutions, Inc. Testimonials on the web page for DSS and a letter or recommendation do not reference Diamond Staffing Solutions, Inc. as the source of a product, but rather Suzanne DeVries. When discussing the expertise held by DSS, marketing literature references 35 years of experience, which is the experience of Suzanne DeVries since she commenced work (part-time) at age 14.[1]

Aside from engaging in material misstatements as to the background and experience of DSS, DSS has also engaged in deceptive representations pertaining to its trademark status, and has otherwise made statements on its web page which are demonstrably false. DSS has demonstrated a propensity for misconduct which cannot be ignored by this Court. Diamond Staffing has repeatedly asserted that the lawsuit filed against it was entirely frivolous, filed for the specific intent of interfering in Diamond Staffing's business operations. These allegations were repeated in the Counterclaim.

It is not disputed that, at the time Suzanne DeVries incorporated DSNH, she was fully aware of the existence of Diamond Staffing, the business of Diamond Staffing, the federal trademark

---

[1] In the 3 year period since 2002, DeVries has not only inflated her experience, but she has also made conflicting claims in her own promotional materials that she has 25, 30 or 35 years experience in the jewelry industry.

3

registration of Diamond Staffing and the Massachusetts trademark registration of Diamond Staffing. It also cannot be disputed that DeVries used the name Diamond Staffing, Inc. as opposed to Diamond Staffing Solutions, with no intent to trade under that name, or to otherwise engage in legitimate business operations. It can clearly be inferred that Suzanne DeVries, operating as the incorporator of DSNH, registered the corporation under that name for the sole and entire purpose

III. ARGUMENT

A. THE STANDARD TO IMPLEAD NEW PARTIES WARRANTS ALLOWANCE OF THIS MOTION

F.R.C.P. 19(a) states that "a person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in that action if (1) in the person's absence complete relief cannot be accorded among those already parties…"

As noted in the fact portion of this brief, there is reason to be skeptical of the actual and physical existence of DSS, the corporate Plaintiff in the underlying claim. By all admissions, DSS operates out of the residential premises of Suzanne DeVries, without having a separate entrance and without paying rent for its office space. DSS operates its telephone lines under the name of Suzanne DeVries, as well as its fax machine. All of the relevant promotional material relates to the experience and contacts of Suzanne DeVries, not DSS. By all measures, DSS has not met corporate formalities. In addition, Suzanne DeVries, the party acting as DSS, is also the same party who has incorporated DSNH, an entity which was clearly and transparently created with tortous intent to harm Diamond Staffing.

Broadly speaking, Diamond Staffing is asking this Court to pierce the corporate veil.

However, Diamond Staffing also asks this Court to recognize that the corporate veil is thin, perhaps non-existent. Under Massachusetts law, "…a party requesting a court to disregard the corporate form must establish the existence of two conditions. First, the party must allege facts suggesting that representatives of one corporation exercise some type of pervasive control over the activities of another corporation; or that there is a 'confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities…'….Second, the party must show that piercing of the corporate veil is necessary to defeat fraud or to prevent gross inequity…" NCR Credit Corp. v. Underground Camera, Inc., 581 F.Supp. 609,612 (D.Mass. 1984), quoting My Bread Baking Co. v. Cumberland Farms, Inc., 353 Mass. 614, 618-19 (1968).

Here, Diamond Staffing has already demonstrated the first prong of the required test. It is clearly evident from sworn testimony by Suzanne DeVries that she has been operating DSS as a person fiefdom, and that she has continually operated DSS as an extension of herself. Corporate formalities have been completely disregarded in all respects. Second, it is clear that, while operating as an alter ego of DSS, Suzanne DeVries created the second sham corporation, DSNH, to advance the business objectives of DSS and to harm Diamond Staffing, without any intent to observe the corporate formalities. It is also evident that DSNH has never operated as a separate and distinct business entity, and that there was never any intent to operate the company as a distinct entity.

There is also amply support for this motion under the second prong of the legal standard. There is no doubt that DSNH was created for the specific intent of harming Diamond Staffing in its interstate business operations in New Hampshire, and with intent to harm the trademark rights of Diamond Staffing.

5

DSNH must be a party to this lawsuit. But it is also imperative that Suzanne DeVries be named as an individual defendant in order to preclude the fraud from creating irreparable harm. Namely, Diamond Staffing can have no remedies against DSS in the event of a judgment against DSS, because all of the assets of DSS actually belong to DeVries. A bankruptcy of DSS, which would be no great loss, would deprive Diamond Staffing of its ability to collect its damages. However, the commingling of assets between DSS and DeVries requires that the assets of DeVries, used to advance the fraud of DSS, must be preserved. Further, DSMH must be added as a party to this case in order to achieve full adjudication of the claim; in the event that Diamond Staffing secures a judgment against DSS, DeVries or DSS must be enjoined from simply transferring business operations to the other entity.

There is substantial evidence of commingling of assets and operations. There is also substantial evidence of fraud and deceit on the part of DSS and DeVries, both with regard to the operation of DSS and with DSNH. Equity requires that all of the culpable parties be added for full adjudication, and to protect the ability of Diamond Staffing to receive full justice in this matter. Diamond Staffing notes that it is not asking the Court in any way to address the substantive merits of the claim, a review that would occur at trial. Diamond Staffing simply notes from a procedural perspective it has made a showing that a question of fact clearly exists as to alter ego capacity, such that a claim for relief based upon those facts is not unwarranted.

To some extent this motion is a formality in order to expedite judicial efficiency. While Diamond Staffing believes that these parties belong in this suit, Diamond Staffing is prepared to bring separate lawsuits against these parties. However, this Court should recognize that one lawsuit is better than two, especially considering the interrelated and intertwined nature of the relationships.

IV. CONCLUSION

For the foregoing reasons, Diamond Staffing, Inc.'s Motion to Implead must be ALLOWED, and the proposed Amended Counterclaim, to include the impleaded parties, should be deemed as filed.

Respectfully Submitted,
**Diamond Staffing, Inc.**
By its attorneys,

_____
Robert N. Meltzer, BBO #564745
P.O. Box 1459
Framingham, MA 01701
Phone: (508) 872-7116

_____
Mary C. Casey, BBO #636250
Harbor Law Group
385 South Street
Shrewsbury, MA 01545
Phone: (508) 842-9244

Dated: December 14, 2005

7

CERTIFICATE OF SERVICE

    I, Robert N. Meltzer, do hereby certify that on this day I served a copy of the foregoing by first class mail, postage prepaid, on:

Nixon Peabody LLP
100 Summer Street
Boston, MA 02110
Attn: Nicholas G. Papastavros, Esq.

_____
Robert N. Meltzer

December 14, 2005

CERTIFICATE OF COMPLIANCE WITH L.R.7.1(2)

Pursuant to Local Rule 7.1 (2), the parties have met and conferred by telephone to discuss the dispute subject to the attached motion, and the parties have apparently been unable to resolve the dispute without the aid of the Court.

                                                Respectfully Submitted,
                                                **Diamond Staffing, Inc.**
                                                By its attorney,

                                                _____
                                                Robert N. Meltzer, BBO #564745
                                                P.O. Box 1459
                                                Framingham, MA 01701
                                                Phone: (508) 872-7116

Dated: December 14, 2005

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIAMOND STAFFING SOLUTIONS, INC ) <br> ) <br> Plaintiff ) <br> ) <br> v. ) <br> ) <br> DIAMOND STAFFING, INC ) <br> ) <br> Defendant/Counterclaim Plaintiff ) <br> ) <br> v. ) <br> ) <br> DIAMOND STAFFING SOLUTIONS, ) <br> INC., DIAMOND STAFFING, INC. NH ) <br> ) <br> and ) <br> ) <br> SUZANNE DEVRIES, ) <br> ) <br> Counterclaim Defendants ) <br> ) | CIVIL ACTION NO:05-40046-FDS |

FIRST AMENDED COUNTERCLAIM

1. Plaintiff in Counterclaim, Diamond Staffing, Inc. (DSI) is a Massachusetts corporation with a principal place of business at 146 West Boylston Drive in Worcester in the Commonwealth of Massachusetts.

2. Defendant in Counterclaim, Diamond Staffing Solutions, Inc. (DSS) is a Delaware corporation with a principal place of business consisting of a "home based office" in a residence located at 5 Remington Court in Derry, in the State of New Hampshire.

3. Defendant in Counterclaim, Diamond Staffing, Inc., New Hampshire (DSNH) is a New Hampshire corporation with a principal place of business at 5 Remington Court in Derry, in the State of New Hampshire. At all times relevant to this matter, DSNH was a sham

corporation, and an alter ego of Defendant in Counterclaim DSS and Defendant in Counterclaim Suzanne DeVries.

4. Defendant in Counterclaim, Suzanne DeVries ("DeVries") is an individual with a residence at 5 Remington Court in Derry, in the State of New Hampshire. At all times relevant to this matter, DeVries was the alter ego of Defendant in Counterclaim DSS and Defendant in Counterclaim DSNH.

5. Jurisdiction over this matter arises from a federal question of trademark infringement by DSS pursuant to 28 U.S.C.A§§ 1331 and 1338(a) and Lanham Trade-Mark Act, §43(a), 15 U.S.C.A. §1125(a), as DSI has brought this claim to bar DSS from use of DSI's "Diamond Staffing" mark.

6. Venue is proper pursuant to 28 U.S.C.A. § 1391.

7. Personal jurisdiction is appropriate, as all three Defendants in Counterclaim, individually, corporately and in an alter ego capacity, committed torts in the Commonwealth of Massachusetts, such that each of the Counterclaim defendants are subject to long-arm service.

8. DSS is infringing on DSI's "Diamond Staffing" mark for which DSI holds a valid Massachusetts registration and has further filed for federal registration.

9. DSI incorporated Diamond Staffing, Inc. in the Commonwealth of Massachusetts on September 15, 2003.

10. DSI started using the name Diamond Staffing, Inc. immediately after incorporation and filed for federal trademark registration on November 12, 2003 under serial #78326647.

11. DSI subsequently obtained state registration of its Diamond Staffing mark in Massachusetts.

12. Immediately upon incorporating, DSI, promptly commenced to establish and protect its trademark rights by engaging in a number of steps and activities that are customarily taken by companies wishing to establish and protect trademark rights; for example, DSI
    a. Obtained telephone listings under the company name,
    b. Caused a website to be created using the name and the Diamond Staffing mark to promote its staffing services,
    c. Applied for both state and federal trademark registration,
    d. Installed signs in each of its retail locations as each of these were opened for business;
    e. Displayed banners and other signs to communicate to the public the opening of the new company,
    f. Ordered business cards and stationery and other related items with the company's name and mark,
    g. Placed advertisements in the local newspapers under the Company name to solicit customers for its placement services, etc.
13. DSI selected the name "Diamond Staffing, Inc." subject to its availability, after making a comprehensive search of the United States Patent and Trademark Office's database, and of the Commonwealth of Massachusetts database and finding that there were no registrants for the mark, "DIAMOND STAFFING."
14. When DSS was established, it never took the basic and customary steps that are taken by most companies wishing to establish or protect trademark rights.
15. DSS did not seek state registration of the Diamond Staffing mark in any state prior to November of 2003.

3

16. DSS did not seek federal registration of the Diamond Staffing mark at any time prior to November of 2003.

17. Upon information and belief, DSS's failure to protect its rights was caused by the gross negligence of its attorneys and company officers to comply with industry standards and norms, as well as legal requirements for such protection.

18. DSS, having become aware of DSI's existence, and realizing that DSS had failed to take steps to register a trademark, filed, on November 22, 2003 (after DSI), with the USPTO for trademark registration.

19. DSS not only applied for registration of its DIAMOND STAFFING SOLUTIONS mark, but also applied for DIAMOND STAFFING, thereby attempting to appropriate DSI's mark, which it knew DSI had already filed for on November 8, 2003.

20. It was a matter of public record that DSI had filed for registration of the Diamond Staffing mark at the time that DSS attempted to file its registration.

21. In the listing of services, DSS attempted to enlarge the scope of its business from a stated exclusivity to the jewelry industry by claiming the much broader definition of "professional staffing services", thereby further infringing on DSI's mark and, violating PTO requirements that the listing of services not be any broader than the mark's actual usage.

22. By DSS's own admission at the time, as well as by the contents of her website and all other promotional materials presented to the Court, DSS promoted itself as a company "focusing exclusively on the jewelry industry"

23. Despite actual knowledge of DSI's existence, in January of 2004, DSS, further willfully and maliciously infringed on DSI's mark by registering a "dummy" domestic corporation

4

in New Hampshire using the exact name of DSI, "Diamond Staffing, Inc." a business which, to date, has not made any of the requisite filings and is, therefore, not in good standing with the State of New Hampshire.

24. DSS has not been a successful company, and has never developed any relevant degree of market share in any market, nor has its use of the Diamond Staffing mark developed any secondary meaning.

25. DSS made this registration for the sole purpose of interfering with DSI's business in New Hampshire and elsewhere, profiting from DSI's name and reputation, and virtually insuring the potential for confusion between the two companies.

26. DSS subsequently filed a knowingly false and frivolous lawsuit in this Court, with the obvious and improper objectives of interfering with DSI's federal registration and of gaining key information about DSI's clients, customers, markets, revenue, etc., for the purposes of interfering with and harming DSI's business.

27. DSS filed a knowingly false and frivolous lawsuit with the transparent intent of trying to recoup losses to its business caused by the failures of the corporation and its attorneys to take the appropriate measures to protect DSS's claim to a Diamond Staffing mark.

28. DSS availed itself of the information it had gleaned during the lawsuit about DSI's business and wrongfully profited therefrom by expanding its personnel placing efforts under the Diamond Staffing mark to industries outside of the jewelry industry, thereby infringing on DSI's mark.

29. Despite DSS's self-stated exclusive commitment and limitation to serving the jewelry industry, after the commencement of the lawsuit, DSS has expanded into other industries, specifically, giftware, through its contact and sales efforts to Swavroski crystal.

30. DSS has also placed a candidate in the computer industry, an area outside of DSS's sphere but directly in competition with DSI.

31. DSS heretofore had never worked with or placed any candidates outside of the jewelry industry.

32. DSS is willfully infringing on DSI by poaching its customers and clients and by deviously and surreptitiously trying to enlarge the scope of its business to overlap with DSI's, and using its knowledge of DSI's operations to its own benefit.

33. DSS has been engaging in willful and knowing trademark infringement.

34. In doing so, DSS tried to disrupt DSI's business and harmed its good name and reputation.

COUNT I
WILLFUL TRADEMARK INFRINGMENT
15. U.S.C. §1125(a)
DSI v. DSS and DSHN

35. The Plaintiff in Counterclaim restates paragraphs 1-34 as if specifically stated herein.

36. The facts alleged herein constitute a knowing and willful and malicious infringement on the trademark rights of the Plaintiff in Counterclaim pursuant to 15 U.S.C. §1125(a).

37. DSS's conduct demonstrates that in engages in deliberate falsehood for its own benefit and at the expense of DSI, including three instances in 2003 and 2004 in which DSS wrongfully and deceptively stated on its website that *"Diamond Staffing Inc.™ and Diamond Staffing Solutions Inc.™ are registered Trademarks"* when, in fact, they were not then, nor are they now registered trademarks. See, Exhibit A.

38. DSS's conduct has also demonstrated a tendency to inflate its qualifications, credentials, abilities and successes in a manner that is deceptive and confusing, and which further

raises doubts about DSS's ability to conform with the requisite legal duties toward entities such as DSI.

39. It is evident that DSS engages in willful misconduct and has otherwise shown a disregard for legal obligations, and that the willful misconduct and disregard for the law will not cease unless the Court specifically enjoins the Defendant in Counterclaim from engaging in such conduct for the protection of DSI.

40. DSNH was created for the express purpose of harming the Plaintiff in Counterclaim by causing intentional confusion and by creating an avenue to solicit the Plaintiff in Counterclaim's customers, and to otherwise interfere in the Plaintiff in Counterclaim's business operations with full knowledge of the mark.

41. As a result of the willful and malicious infringement on the Plaintiff in Counterclaim's Diamond Staffing mark, the Plaintiff in Counterclaim has been harmed, and is entitled to injunctive relief, impoundment of infringing materials, damages, attorney's fees and costs.

### COUNT II
### WILLFUL TRADEMARK INFRINGMENT
### M.G.L. c. 110B §11
### DSI v. DSS and DSNH

42. The Plaintiff in Counterclaim restates paragraphs 1-41 as if specifically stated herein.

43. The Plaintiff in Counterclaim has registered the Diamond Staffing mark in Commonwealth of Massachusetts.

44. The Defendant in Counterclaim has repeatedly and knowingly and maliciously infringed on the mark, not only by using the Diamond Staffing mark, but by using the "sm" mark within the Commonwealth of Massachusetts, thereby and intentionally creating confusion between the two businesses by suggesting that DSS is DSI.

45. The facts alleged herein constitute a knowing and willful and malicious infringement on the trademark rights of the Plaintiff in Counterclaim pursuant to M.G.L. 110B §11.

46. DSNH was created for the express purpose of harming the Plaintiff in Counterclaim by causing intentional confusion and by creating an avenue to solicit the Plaintiff in Counterclaim's customers, and to otherwise interfere in the Plaintiff in Counterclaim's business operations with full knowledge of the mark.

47. As a result of the willful and malicious infringement on the Plaintiff in Counterclaim's Diamond Staffing mark, the Plaintiff in Counterclaim has been harmed, and is entitled to injunctive relief, impoundment of infringing materials, damages, attorney's fees and costs.

COUNT III
M.G.L. c. 93A
DSI v. DSS and DSNH

48. The Plaintiff in Counterclaim restates paragraphs 1-47 as if specifically stated herein.

49. DSI, DSS and DSNH are all engaged in trade or commerce within the Commonwealth of Massachusetts.

50. The conduct of Defendants in Counterclaim, of willfully infringing on the Plaintiff in Counterclaim's mark, and of engaging in intentional poaching of business opportunities and trading on the good will and reputation of the Plaintiff in Counterclaim for the benefit of the Defendant in Counterclaim, constitutes unfair and deceptive trade practices as precluded and barred by M.G.L. c. 93A.

51. As a result of this conduct, the Plaintiff in Counterclaim has been harmed.

COUNT IV
DECLARATORY JUDGMENT
DSI v. DSS, DSNH and DEVRIES

52. The Plaintiff in Counterclaim restates paragraphs 1-51 as if specifically stated herein.

53. At all times relevant to this matter, DeVries operated DSS out of her home, commingled her assets with DSS, ignored corporate forms, ignored corporate formality, identified her experience as that of DSS, commingled business relationships and telephone numbers and otherwise engaged in a pattern and practice of activity that demonstrated that DSS and DeVries were alter egos of each other, and that DSS was a sham corporation.

54. At all times relevant to this matter, DeVries operated DSNH out of her home, commingled her assets with DSNH, ignored corporate forms, ignored corporate formality, identified her experience as that of DSNH, commingled business relationships and telephone numbers and otherwise engaged in a pattern and practice of activity that demonstrated that DSNH and DeVries were alter egos of each other, and that DSNH was a sham corporation.

55. As an agent of DSS and DSNH, DeVries engaged in the conduct described herein in behalf of DSS and DSNH as an alter ego of these companies, and must be held personally liable for the acts and conduct of the sham companies, which were inadequately capitalized and which were designed for the express purpose of sheltering DeVries from the liabilities and harms caused by DeVries and by the misconduct performed by the sham corporation.

56. The interest of justice requires that this Court declare DeVries to be an alter ego of DSS and DSNH, and that DSNH is an alter ego of DSS, such that DeVries may be found to be personally liable for the acts and conduct of DSS and DSHN.

WHEREFORE, DSI respectfully requests the following relief:

1. That DSS and DSNH be enjoined from using the mark DIAMOND STAFFING except in the limited area of personnel staffing services to the jewelry industry, and in a manner that makes clear that Diamond Staffing Solutions is not in any way affiliated with Diamond Staffing, Inc., or its affiliated business enterprises

2. That DSS and DSNH be permanently enjoined from using the Diamond Staffing mark in a manner that creates confusion between DSS, DSNH and DSI, including but not limited to the improper conduct of using abbreviations of the Diamond Staffing Solutions name in e-mail or web environments in a manner that creates confusion with the Plaintiff in Counterclaim's lawful use of the diamondstaffinginc.com domain name;

3. That this Court find that DSS incorporated DSNH as a malicious and intentional attempt to sow confusion between DSS and DSI, and that said conduct constitutes a willful and malicious infringement of DSI's mark;

4. That DSS be ordered to dissolve any business registered under the name DIAMOND STAFFING, INC. in New Hampshire and be enjoined from ever registering any business under the name DIAMOND STAFFING, INC. in any jurisdiction.

5. That this Court find that DSS and DSNH engaged in a knowing and willful infringement of DSI's trademark rights;

6. That this Court find that DSS filed this lawsuit for the transparent purpose of infringing on the Plaintiff in Counterclaim's trademark rights as an act of trademark infringement not subject to immunity;

7. That DSS be ordered to pay for DSI's attorneys' fees associated with all matters relating to the defense of the frivolous lawsuit brought by DSS, and with the bringing of this Counterclaim to enforce its rights to its mark;

8. That this Court order DSS to pay any and all damages incurred by DSI as a result of DSS's conduct, and this Court order DSS to disgorge any unlawful profits derived from usurpation of the mark, that any materials in the possession of DSS which constitute an infringement of the mark be ordered surrendered by DSS to the Court or the Plaintiff in Counterclaim to be destroyed

9. That this Court declare that DSNH and DeVries were operating as alter egos of DSS, that DSS and DSNH are sham corporations and that DeVries shall be personally liable for judgments entered against DSS and DSNH; and

10. Any further relief deemed just and appropriate by this Court.

THE PLAINTIFF IN COUNTERCLAIM DEMANDS A TRIAL BY JURY ON ALL COUNTS

Respectfully Submitted,
**Diamond Staffing, Inc.**
By its attorneys,

_____
Robert N. Meltzer, BBO #564745
P.O. Box 1459
Framingham, MA 01701
Phone: (508) 872-7116

_____
Mary C. Casey, BBO #636250
Harbor Law Group
385 South Street
Shrewsbury, MA 01545
Phone: (508) 842-9244

Dated: December 14, 2005

11